### MEDEMA v. HINES, Director General of Railroads, et al.

(Circuit Court of Appeals, Eighth Circuit. April 14, 1921.)

No. 5660.

**1. Railroads ⬤⟞303(4)—Bridge reasonably safe sufficient.**

The law only requires that a highway bridge, with its approaches, over a railroad, should be constructed and maintained so as to be reasonably safe for the ordinary needs of travel.

**2. Railroads ⬤⟞303(4)—Bridge with curve and grade held sufficient.**

The fact that a highway bridge over a railroad track was constructed with a curve approximately a 60-foot arc of a circle having a circumference of 290 feet, and that it had a grade downward from the center approximately 3 per cent., does not authorize an inference that bridge was negligently constructed.

**3. Negligence ⬤⟞136(5)—Court determines whether facts from which negligence may be inferred have been established.**

A trial court has the duty to say whether any facts have been established by sufficient evidence from which negligence can be reasonably and legitimately inferred.

**4. Railroads ⬤⟞303(4)—Railing on approach to bridge need not be strong enough to resist weight of automobile.**

A railroad is not required to construct and maintain a railing on an approach to a highway bridge over its tracks sufficiently strong to resist and hold back the pressing power of an automobile striking against it, so that negligence cannot be inferred from the fact that the railing gave way when struck by plaintiff's automobile.

In Error to the District Court of the United States for the Northern District of Iowa; Henry T. Reed, Judge.

Action by D. Medema against Walker D. Hines, Director General of Railroads, and another. Judgment for defendants on directed verdict, and plaintiff brings error. Affirmed.

E. E. Wagner, of Sioux City, Iowa (C. A. Plank, of Hawarden, Iowa, on the brief), for plaintiff in error.

Henry L. Adams, of Des Moines, Iowa (Jepson & Struble, of Sioux City, Iowa, and G. E. Hise, of Des Moines, Iowa, on the brief), for defendants in error.

Before SANBORN and CARLAND, Circuit Judges, and LEWIS, District Judge.

LEWIS, District Judge. The plaintiff Medema brought this action against the Director General of Railroads and the Chicago & Northwestern Railway Company, and there was judgment against him on a directed verdict after the evidence for both sides was in. He received the personal injuries complained of just as he passed off of the west end of a country road bridge while on the way to the town of Hawarden in his Ford automobile. The bridge is a part of the highway where it crosses overhead the tracks of the Chicago & Northwestern Railway Co., and is 155 feet long, exclusive of dirt embankments thrown up as approaches. He alleged in his complaint as grounds of liability that the defendants were negligent in these respects: (1) That the

---

⬤⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

bridge was not constructed on a straight line with the highway, and was constructed with unusual, dangerous and unsafe curves in it, (2) that the approach to the west end of the bridge was so narrow that it was insufficient, unsafe, and dangerous to travelers on the highway, (3) that the bridge, with its approaches and dangerous curves, was so narrow that it was unsafe and dangerous, (4) that the west approach to the bridge was unsafe and dangerous in that there was a precipice of 40 feet on each side, and it was dangerously narrow and steep, (5) that there was not a sufficient and safe guard-rail on the sides of the approach to reasonably prevent going over said precipices in event of accident, and (6) that the southwesterly corner of the bridge is about four inches higher than the wagon track in the approach at the northwesterly corner.

As he left the bridge his auto went through the rail on the side of the wagon road on top of the embankment, down the embankment head end first and upright until it reached the foot of the embankment, where it turned over and Medema was injured. He lived about half a mile east of the bridge and had frequently crossed it in his automobile, in a wagon, and in driving stock across it. The bridge was constructed on a curve near its westerly end, though straight with the dirt roadway where the two join. The curve is not regular, but would constitute approximately a 60-foot arc of a circle having a circumference of 290 feet. The floor of the bridge is 17 feet wide and has been replanked to a width of 12 feet in the center, so as to raise that space three inches above a strip 2½ feet wide on either side. From the center of the bridge west, including the curve, there is a uniform drop of approximately 3%. The top of the dirt embankment at the west end is narrower than the floor of the bridge but has a clear space for travel of 13½ feet in width, and it continues the drop to the west on a grade of about 5½%. There is a railing on either side of the bridge and embankment, that on the embankment consisting of three planks, each one by six inches, fastened to 6-inch posts set in the ground 6 to 8 feet apart. It was a damp, misty, foggy, rainy day in December, 1918. Medema had chains, which are put on the rear wheels of an auto to prevent its skidding when the roads are muddy, but he did not put them on this day. When he reached a point about 40 feet from the west end of the bridge, which is in the curve, his car skidded to the left with the curve and struck the railing of the bridge on that side. Both wheels on the left-hand side got off of the center planking. The floor of the bridge was wet, muddy and slippery. He kept going and brought the two left-hand wheels back on to the 12-foot planking 5 or 6 feet from the end of the bridge, and in doing so turned the head end of his auto so far to his right that it was crosswise the road when it reached the dirt embankment. The power being still on he was unable to right his auto before it ran into and went through the railing on the right-hand side and down the embankment.

Medema testified that when his auto skidded he was going about 5 miles an hour. A lady who was riding with him testified that the auto skidded and hit the south side of the bridge 12 or 14 feet from the west end, that they were going 7 or 8 miles an hour when he hit the bridge.

She admitted that she told an agent of the Railway Company shortly after the accident that Medema "was driving pretty fast, I couldn't estimate his speed, but he was going pretty fast over the bridge." The bridge was constructed in 1912.

The directed verdict was on two grounds, first, there was no proof that either defendant had constructed or was maintaining the bridge, and second, there was no evidence in the case from which negligence on the part of either defendant might reasonably be inferred. There was another question of fact left in serious doubt, which it was intimated might also support the action of the court, that is, the proof did not disclose which defendant was operating the railroad at the time of the accident.

[1, 2] Considering the question of negligence, we observe that there is not and cannot be any disagreement between the parties as to the measure of care required in the construction and maintenance of the bridge and approaches. The law only required that they should be reasonably safe for the ordinary needs of travel. Monson v. Railway Co., 181 Iowa, 1354, 159 N. W. 680; Peterson v. Railway Co., 185 Iowa, 378, 170 N. W. 452. While it may be said that most bridges are straight and in direct line with the roadway at either end, and that the floors are usually level from end to end, yet it is a matter of common knowledge that they are not all straight, nor are they all in direct line with the road at either end, nor are the floors of all of them level. Common knowledge and experience teaches that some bridges on country roads and some on streets in cities are constructed on a curve and with a drop or grade in the traveled way on them, and some are not in direct line with the approach at either end. The curve in this bridge was not sharp nor was the grade more than slight, and the trial court could not find that the curve and the grade had any tendency to establish the negligence charged in that respect. We are not convinced that its view was wrong.

[3] A trial court is under the duty "to say whether any facts have been established by sufficient evidence, from which negligence can be reasonably and legitimately inferred." Randall v. Railroad Co., 109 U. S. 478, 3 Sup. Ct. 322, 27 L. Ed. 1003. From the evidence we think it clearly appeared that the bridge and approach were reasonably safe for a traveler who used them with ordinary care, and that there was no evidence tending to establish the contrary.

In Peterson v. Ry. Co., supra, the Supreme Court of Iowa said:

"An elevation of from two to three inches between the road surface and the top of the planks [at a grade crossing] does not tend to show negligence either in the construction or maintenance of the crossing. If we should so hold, then there is scarcely a public highway in the state of Iowa that is in a reasonably safe condition for travel. The company owes only the duty to keep the highway in a reasonably safe condition; to put it in as safe condition as highways usually and ordinarily are kept for travel. It is not bound to make the highway more safe than highways usually and ordinarily are made and kept for travel."

[4] As to the railing on the approach, McClain v. Town of Garden Grove, 83 Iowa, 235, 48 N. W. 1031, 12 L. R. A. 482, Swain v. Spokane, 94 Wash. 616, 162 Pac. 991, L. R. A. 1917D, 754, and Wasser v.

Northampton County, 249 Pa. 25, 94 Atl. 444, L. R. A. 1915F, 973, convince us that the law did not require that the defendants construct and maintain a railing that would resist and hold back the pressing power and force of an automobile. That is not its purpose, and while the requirement may embody more than a warning, it cannot be said to include the strength required to withstand the exertion of such unexpected power. In McClain v. Town of Garden Grove, supra, the Supreme Court of Iowa said:

"It was its [defendant's] duty to provide for the use of the bridge in the usual manner, and to guard against ordinary contingencies, or those which might be reasonably apprehended. It was its duty to provide railings of sufficient height and strength to prevent horses and other animals from walking off at the side, and to resist any weight and pressure which would be applied under ordinary circumstances; but it was not its duty to provide a railing which would successfully resist the weight of a horse of ordinary size precipitated suddenly against it."

In Wasser v. Northampton, supra, the Supreme Court of Pennsylvania said:

"There is no hard and fast rule as to the kind and character of a guard rail or barrier to be erected so that the highway may be deemed reasonably safe for the ordinary needs of travel. Public roads are intended for ordinary travel: if they meet the requirements which their ordinary uses demand, the authorities in charge of them have performed their duty under the law, and cannot be made answerable in damages for extraordinary accidents occurring on them."

We agree with the learned trial judge that there were no facts from which the negligence charged could be reasonably inferred.

Affirmed.