Coös,
June 7, 1921.

## BURLEIGH H. KELSEA, *Adm'r*, v. STRATFORD.

In an action upon the statute of highways the question whether a railing which is not strong enough to prevent a slowly moving car, weighing 3600 pounds, from going over a 25-foot embankment is a sufficient railing within the meaning of Laws 1893, c. 59, s. 1, is one of fact.

In such case, evidence of a selectman that no complaints had been made to him about the defect in question and that he never heard of such complaints is inadmissible where the only purpose of the offer is to show that the road was not so defective as to attract public attention.

In such case, the statement of counsel in argument that "a railing should not only be a notice of a bank but also a good strong railing and not one that might fall down if a baby carriage ran against it" is unexceptionable.

Certain evidence as to the condition of a railing and its position with reference to the top of an embankment warranted the finding that a traveler was killed by a dangerous embankment defectively railed and that he was not in fault at the time of his injury.

Opinion evidence is admissible when it appears that the witness' knowledge of the matter in issue is so far superior to that of men in general that his opinion may aid the trier.

The erroneous admission of evidence is not ground for disturbing a verdict, if the evidence is immaterial and not calculated either to excite prejudice or to confuse the jury.

CASE, for causing the death of the plaintiff's intestate. Trial by jury and verdict for the plaintiff. The intestate left North Stratford in an automobile on the night of December 28, 1918, to visit a patient. The road was fairly good to the Jonah place, some four hundred feet north of where the accident happened. From there on, the middle of the road was rough and icy, but the right or westerly side of the road was free from ice and comparatively smooth. There was, however, a twenty-five foot embankment on that side of the road with nothing to prevent a traveler driving off the bank or to notify him of its existence, except a wire fence along the property line. This line followed the top of the bank except for a short distance at the place where the accident happened. At that point the fence was two feet west of and one foot below the top of the bank. The intestate drove in the middle of the road until he reached the Jonah place. He then turned his car first to the right side of the road, then to the left side, and then back to the right side and drove parallel with and about two feet from the fence until he came to the

place where the fence was two feet from the top of the bank; he then attempted to turn his car back into the road and that caused his rear wheels to skid and the car rolled down the bank into the meadow.    Transferred by *Kivel*, C. J., from the April term, 1920, of the superior court, on the defendants' exceptions to the denial of their motion for a directed verdict, to evidence and to remarks of plaintiff's counsel.    Other facts and evidence relevant to the exceptions appear in the opinion.

*Drew, Shurtleff, Morris & Oakes*, (*Mr. Morris* orally), for the plaintiff.

*Horace J. Holden, Sullivan & Daley* and *Ira W. Thayer*, (*Mr. Sullivan* orally), for the defendants.

YOUNG, J.    It can be found that the intestate was traveling on a dangerous embankment defectively railed at the time he was killed.    This is true whether the office of a railing is, as the plaintiff contends, to prevent travelers driving over an embankment, or as the defendants contend, to notify them of the embankment, for the railing, if we call the fence a railing, was almost ready to fall down and was not built on the top, but two feet from and one foot below the top of the bank.    In other words, it can be found either that the railing was defective, or that it was so placed that it was calculated to deceive rather than to notify travelers as to where it was safe for them to drive, for instead of its being safe to drive close to the railing as is usually the case, it was unsafe to drive within two feet of it.    The defendants concede that the burden was on them to prove the intestate was guilty of contributory negligence, but say they have sustained that burden.

In other words, they contend that the conclusion the accident would not have happened if the intestate had used ordinary care to prevent it, is the only one of which the evidence is fairly capable. In support of this contention they say first that it was negligence for the intestate with his knowledge of the situation and its dangers to leave the middle of the road while driving along this embankment. Although it is probably true that he was in a general way familiar with the road, it does not appear that he knew the fence did not follow the top of the bank, consequently it cannot be said that the ordinary man might not have done what he did — that is, might not have turned from the rough and icy part of the road to where it was smooth and free from ice, and driven, as he supposed, some two feet

from the edge of the bank. The defendants also say it conclusively appears that the intestate was driving faster than twenty-five miles an hour when the accident happened. The evidence which tends to this conclusion is that he was driving at a "pretty good clip" when he passed the Jonah place, and that he was accustomed to drive from twenty-five to thirty-five miles an hour. While this evidence would sustain a finding that he was driving more than twenty-five miles an hour when he was killed, the position of the car and its condition after the accident, together with the condition of the fence, tend to the conclusion that he was driving quite slowly, for the car was found right side up and directly opposite the place where it left the road. The lights were burning and the car was not so damaged but what it could be removed under its own power.

In short, it can be found that the damage to the car was such as you would expect if it simply rolled over the bank; not such as you would expect if it was moving more than twenty-five miles an hour when it left the road.

The defendants also say the intestate was asleep when the accident happened; but it is enough in so far as this contention is concerned to say that the evidence relevant to that issue is conflicting. If the facts he was all worn out and occasionally went to sleep when driving tend to the conclusion that he was asleep when the accident happened, the fact he was awake two or three minutes before the accident tends to the opposite conclusion. And that is true of the fact there was no wavering in the tracks the automobile made as it crossed and recrossed the rough and icy part of the road just before the accident happened.

The defendants contend that even if it can be found that they were, and that the intestate was not in fault, it cannot be found that their fault was the legal cause of the accident. There is, however, no merit in their contention, for it can be found that if the bank had been properly railed, or even if the fence had been built in the place where railings are usually built, the accident would not have happened.

It must be held, therefore, that the evidence warranted the jury's finding that the defendants were, and that the intestate was not, in fault, and that but for their fault the accident would not have happened.

A witness who was asked as to the position of the car when he saw it immediately after the accident said the rear end canted a little when it tipped over and caused it to face the bank. The defend-

ants excepted to the court's refusal to strike the answer out. If it is true, as the defendants contend, that the witness was not stating what he saw, but merely giving his opinion as to why the car was in the position in which he found it, it does not follow that the verdict must be set aside, for opinion evidence is admissible when it appears that the witness' knowledge of the matter in issue is so far superior to that of men in general that his opinion may aid the trier. *State* v. *Killeen*, 79 N. H. 201; and it is obvious that in this case the presiding justice could find that the witness' knowledge as to why the car faced the bank was so far superior to that of the jurors that his opinion might aid them in their search for the truth.

There is, however, one other reason why this exception must be overruled. The statement that the back end of the car canted when it rolled down the bank was immaterial and was not calculated either to excite prejudice or to confuse the jury, consequently the admission of this statement furnished no reason for disturbing the verdict. *Parker* v. *New Boston*, 79 N. H. 54–56. This also disposes of the defendants'.exception to what plaintiff's counsel said in his closing argument in respect to Watts' testimony.

The plaintiff was permitted, subject to exception, to show the length of the car. One of the issues in the case was the speed at which the car was moving when it left the road, and it is obvious that the length of the car as well as its weight, its position after the accident and the damage it sustained, were all relevant to that issue.

The court, subject to exception, refused to permit the defendants to show by one of their selectmen that no complaints had been made to him about the defect in question, and that he never heard of any such complaints. The defendants' purpose in offering this evidence must have been to show that the road was not so defective as to attract public attention; not to show that they neither knew nor ought to have known of the defect, — for the defect had existed ever since the road was built in 1912. Consequently it cannot be said that the court erred when it excluded the evidence.

It was the defendants' contention that the office of a railing is not to prevent a traveler from driving over an embankment, but to notify him of its existence. In answering this contention, plaintiff's counsel said, a railing should not only be a notice of a bank, but also a good strong railing, and not one that might fall down if a baby carriage ran against it. The defendants contend that this statement was illegal because there was no evidence that the fence in question would fall down if a baby carriage ran against it. It is

enough, in so far as this contention is concerned, to say that counsel did not say the fence would fall down if that happened. What he said was, that a railing which would fall down if that happened was not a sufficient railing.

The defendants excepted to the court's refusal to instruct the jury that "towns are not bound to maintain railings that will resist, without breaking, the force of an automobile weighing 3600 pounds, traveling at any given rate of speed, but are required to maintain only such railings as will make the highway reasonably safe for travel thereon."

It may be true, as the defendants contend, that a town is not bound to maintain railings that are strong enough to prevent a person driving his car over a bank, but it does not follow that a railing which is not strong enough to prevent a slowly moving car from going over a twenty-five foot embankment is a sufficient railing within the meaning of that term as used in Laws 1893, c. 59, s. 1. The test to determine that issue is to inquire whether the railing is such a one as the ordinary man would maintain in such a place, and it cannot be said as a matter of law that the ordinary man would not maintain a railing at the place where the accident happened which would prevent a slowly moving car weighing 3600 pounds from leaving the road. *Richmond* v. *Bethlehem*, 79 N. H. 78.

*Exceptions overruled.*

All concurred.