# Richmond

## SOUTHERN RAILWAY COMPANY V. MURIEL MAGAGNA.

November 15, 1934.

Present, Campbell, C. J., and Epes, Hudgins, Gregory, Browning and Chinn, JJ.

The opinion states the case.

*Thomas B. Gay* and *Harrison, Long & Williams,* for the plaintiff in error.

*Barksdale & Abbot,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

The defendant in error recovered a verdict and judgment against the railway company in the trial court for $1,000. The action grew out of damages to an automobile which arose when it was driven, or slid, through the wing panel of a bridge that crosses over the tracks of the railway company.

Mr. A. W. Magagna, accompanied by his brother, P. T. Magagna, was driving the automobile of Mrs. Muriel Magagna along the state highway leading from Amherst to Lynchburg. The automobile was a Studebaker, seven passenger car and its weight was 4,000 pounds. Mrs. Muriel Magagna, the wife of P. T. Magagna and the owner of the car, was not accompanying her husband and his brother.

By stipulation it was agreed between the parties to the action that the trip constituted a joint enterprise, so that any negligence on the part of the driver would be imputed to the plaintiff below, Mrs. Magagna, and if it contributed to the injuries, it would bar her recovery. Therefore, the driver may be considered the plaintiff.

The accident occurred on September 28, 1933, at approximately 7:30 in the evening. It was dark and the road was wet and slippery. The bright headlights of the car were burning. The car was in good mechanical condition and its appliances in good working order.

The highway bridge crosses over the tracks of the railroad at right angles. The bridge is a narrow one and it is not practicable for two cars to pass on it, though it is possible. It is not a two way bridge. As the bridge is approached from the north, the direction from which the car was being driven, the road gradually descends and is straight for a thousand feet, until within eighty to one hundred feet of the bridge where it descends rather abruptly on a grade of twelve per centum and curves slightly to the left. The surface of the road is tar macadam and

eighteen feet wide. At the south end of the bridge the road turns sharply to the right at almost a right angle. To enter the bridge from the north it is necessary to turn to the left and the road tapers as the bridge is approached.

When the driver reached the brow of the hill several hundred feet from the bridge, he was traveling at thirty-five miles per hour. This reduced speed was made necessary by the wet road and the rains though it was not raining at the time. Upon descending the hill the driver gently applied the brakes. When within one hundred to two hundred feet of the bridge he saw the lights of another car approaching from the opposite direction. The right angle approach to the bridge from the south, the direction from which the other car was coming, indicated to the driver that he was either approaching an intersecting road or a sharp right hand turn. He therefore continued to apply his brakes and reduce his speed. When within one hundred to two hundred feet of the bridge the driver saw that he was approaching a narrow bridge. He continued to apply his brakes and drove to the extreme right side of the road so that the right wheels were on the dirt shoulders. He brought the speed of his car down to five miles per hour. He passed the car that came from the opposite direction when he was about thirty or forty feet from the bridge, and at that point he lost control of his car. He continued on very slowly and succeeding in turning his car to the left to enter the bridge, and just as he was entering the bridge, he tried to turn to the right, but on account of the slippery road the wheels would not take traction and the car slid slowly to the left, on through the left wing panel and first panel of the bridge and rolled on its four wheels some thirty-five feet down the very steep embankment on to the railroad tracks in the cut below the bridge. The automobile was practically demolished.

At a distance of approximately four hundred feet from the approach to the bridge from the north, the State Highway Department had erected the customary sign, "Narrow Bridge" which was plainly visible and of the kind which

reflects the head light of an automobile. At two hundred and seventy-six feet from the bridge there was another sign "Slow—Narrow Bridge and Narrow Road 300 Feet Ahead." There was a red marker on this sign and the word "Slow" was also of the reflector type. At the other end of the bridge was another highway sign indicating a sharp turn to the right. On the right approaching the bridge from the north was a white highway fence and white posts that extended back from the bridge one hundred and eighty-seven feet.

The driver of the plaintiff's car did not see any of the warning signs, nor did he see the customary right curve sign just across the bridge. He did not see the bridge until he was within one hundred and ten to two hundred feet of it.

The negligence against the railway company relied upon here is that the company negligently maintained the guard rail and that it failed to maintain a sufficient wheel guard on the bridge. The fence on the side of the bridge is spoken of as the guard rail, while the timber at the edge of and above the level of the flooring which is maintained for the purpose of deflecting the wheels of a vehicle which might come in contact with it is called the wheel guard.

The company denied all negligence and asserted that if it were negligent, such negligence was not the proximate cause of the injury to the plaintiff's automobile. It charged the plaintiff with such contributory negligence as barred her recovery. The trial court thought that these questions were for the jury under the evidence that had been introduced and it instructed the jury fully, on the law of the case. The verdict in favor of the plaintiff was sustained, the court being of opinion that the evidence was sufficient.

There are several assignments of error but in view of what follows it will become apparent that only one need be discussed. We think the plaintiff's driver was guilty of such contributory negligence as barred any recovery.

It is quite true from the evidence of the plaintiff that the railroad company failed to maintain the bridge in ac-

cordance with the rule laid down by Justice Epes in *Norfolk & Western Ry. Co.* v. *Kelley,* 153 Va. 713, 151 S. E. 121, 122. There this court defined the duty of a railroad company in regard to the maintenance of its highway bridges. According to that rule, accepting the testimony of the plaintiff's witnesses, which we do under well established rules, the railroad company was guilty of negligence. The sleeper, upon which the fence posts were supposed to be attached, was rotten and the posts could not be securely fastened to it. On these posts, the guard rail was fastened. The wheel guard, on the north side of the bridge had been practically eliminated by raising the floor of the bridge with the tar and gravel.

In the *Kelley Case* this court said: "While, as the ordinary means and instrumentalities of travel change, railroads must keep in mind the new methods and instrumentalities of travel in the construction and maintenance of bridges carrying highways over their tracks, under ordinary conditions a railroad company is not charged with the duty of constructing and maintaining a fence, or railing, and guard rail or other obstruction on such bridges which will insure that a fast-moving automobile driven against the barrier will not crash over the guard rail along the floor surface and through the fence or railing and fall from the bridge. But the automobile is now the most common mode of travel on the highways, and it is the duty of the company to erect and maintain on such bridges fences, or railings, and guard rails along the floor or other obstructions which will enable a person driving an automobile and using the highway in the exercise of ordinary care to travel over such bridges safely. There is no hard and fast rule as to the kind, character and strength of the fence, or railings, or guard rails or other obstructions which must be erected and maintained; but they must be sufficient to protect a person driving an automobile on the highway at the point at which the bridge is located in the exercise of ordinary care against ordinary contingencies or those which may be reasonably apprehended. The requirement calls for

more than a warning of the danger and a guide to the eye in keeping to the roadway; and the duty of the railroad company is not discharged by the erection and maintaining of a flimsy or rotten fence, or railing, presenting a visible warning and guide to the eye, and a guard rail along the floor of insufficient height to deflect the wheels of an automobile which may come in contact with it when being driven over the bridge with ordinary care. *Comstock* v. *Great Northern Railway Co.*, 157 Minn. 345, 196 N. W. 177; *Hardin* v. *Southern Railway Co.*, 36 Ga. App. 427, 136 S. E. 802; *Bond* v. *Billerica*, 235 Mass. 119, 126 N. E. 281; *Kelsea* v. *Stratford*, 80 N. H. 148, 118 Atl. 9; *Medema* v. *Hines* (C. C. A.) 273 Fed. 52."

■ While we adhere to the rule, as stated in the *Kelley Case,* regarding the duties of a railroad company in respect to highway bridges, yet under the testimony of the driver of the automobile in the case at bar, he was guilty of such contributory negligence, that no recovery should be sustained, regardless of the negligence of the railroad company.

It only remains necessary to point out the particulars of the negligence of the plaintiff's driver upon the occasion in question. For this purpose his testimony will be used. He testified that he did not see either of the two warning signs as he descended the hill and approached the bridge and also that he did not have his car under control for a distance of thirty or forty feet before reaching the bridge. If he had been as vigilant as the conditions then surrounding him demanded, he would have seen, in the exercise of ordinary care, both of those signs. If he had seen them they would have indicated that he was approaching a narrow bridge and a narrow road. With this information, he could have brought his car under such reasonable control that an accident would not likely have happened. But instead of seeing the signs and exercising the precautions warranted under the circumstances he continued down the grade, and at the same time, knowing the wet condition of the road, he continued to apply his brakes, until he reached a point so close to the entrance to the bridge that it was then too late to

properly guide or stop the car. When he was thirty to forty feet from the bridge, according to his own testimony, the car was not under control—that is, he could neither guide nor stop it. If he had seen and properly heeded the warning signs, which were clearly visible, he would have had ample time to have brought his car under such control as the descending grade and the wet road required of one exercising ordinary care for his own safety. Had he exercised this care, the accident, no doubt, would have been averted. Negligence in this respect on the part of the driver of the car precludes a recovery and the judgment should be reversed and final judgment entered here for the Southern Railway Company.

*Reversed.*