## HAMILTON v. SOUTHERN RY. CO.
### No. 5583.

Circuit Court of Appeals, Fourth Circuit.
June 16, 1947.

DOBIE, Circuit Judge, dissenting.

---

John W. Rust, of Fairfax, Va., and Henry P. Thomas, of Alexandria, Va. (W. Hobart Little, of Washington, D. C., on the brief), for appellant.

Gardner L. Boothe, of Alexandria, Va., and Thomas B. Gay, of Richmond, Va. (Armistead L. Boothe, of Alexandria, Va., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

## SOPER, Circuit Judge.

The complete collapse of a bridge which carried the public highway over the tracks of the Southern Railway Company at Fairfax Station, Virginia, caused the death on the morning of June 4, 1944, of Robert V. Hamilton, a member of the armed forces of the United States who was riding at the time in an army truck that was one of a convoy of 84 one-and-one-half ton trucks en route from Fort Belvoir to Big Meadows in the Shenandoah Valley, Virginia. The suit was brought by his administratrix against the Railway Company which was under a duty to construct and maintain the bridge by virtue of the provisions of Sections 3885, 3972, 3974, 3974a, and 3974b of the Code of Virginia of 1942.

A driver and his assistant occupied the front seat of the truck while 12 or 13 soldiers, including the deceased, were seated in two rows of longitudinal seats inside the body of the truck which was covered by a tarpaulin that confined their field of vision to the rear of the vehicle. Approximately 80 trucks, running at intervals of 100 yards, had crossed in safety from east to west, but as soon as the decedent's truck, one of the last in line, entered upon the bridge, it suddenly collapsed without warning and the truck with its occupants fell to the railroad tracks 35 or 40 feet below.

The bridge was 128 feet in length. The metal superstructure was of the open type and consisted of two overhead trusses, one on each side, supported at the ends by large wrought iron posts rising at an oblique angle and resting upon abutments. These trusses carried the entire weight of the bridge, including the flooring which was composed of wooden cross beams and wooden planks. The four end posts were completely exposed and unprotected, and it is conceded that the cutting or shattering of any one of them would cause the whole structure to fall.

The bridge was first erected before 1890 and had been used by the Railway Company in Alabama as a railroad bridge to carry locomotives and cars, weighing a total of 130 tons. But when the line was strengthened to carry a greater weight in 1903, it was installed at Fairfax as part of the public highway. It was considered safe for ten-ton vehicles by the State Highway Department; and for a year military convoys had used it with safety. It was inspected every three months, the last time in March, 1944, and no defect in its condition was observed.

At the trial the plaintiff endeavored to show that the bridge was in a condition of disrepair and unfit for the passage of modern vehicular traffic. Testimony was given as to minor defects existing before the accident, such as a crack through a line of rivets, a nut missing from a bolt, the rattling of the floor, and the vibration of the superstructure when vehicles crossed; but this evidence need not be examined in detail, for as found by the trial judge, it was quite lacking in probative force to account for the accident. So far as the plaintiff is concerned, the fall of the bridge was unexplained, and reliance was restricted to an inference of unfitness in the structure derived from the mere occurrence of the catastrophe.

The Railway Company, on the other hand, had a definite and reasonable explanation based upon weighty evidence. This testimony tended to show that although the truck proceeded at a low rate of speed until it reached the neighborhood of the bridge, it was then speeded up to 40 miles an hour, notwithstanding a warning sign by the roadside, so that when the driver rounded a sharp right hand curve situated 50 feet before the eastern entrance to the bridge, it was necessary to apply the brakes; and when he did so, the truck ran over to the left side of the road and struck the southeast corner of the bridge and shattered it, whereupon the bridge collapsed at the very moment when the truck bounced back from the corner post, upon the flooring of the passageway.

While this testimony is at variance with that of the driver of the truck and other witnesses for the plaintiff, it presented an explanation worthy of careful consideration; and it was supported by subsequent examination which disclosed a clean break in the corner post, such as a heavy blow from the truck could have made, and an indentation in the left front corner of the steel body of the truck in which was imbedded a rivet similar to rivets knocked out of the fractured post. The probability that the truck struck the post was enhanced by the fact that the bridge was scarcely wide enough to accommodate two passing vehicles and by the further fact that a vehicle moving at a high rate of speed around the sharp curve just before the entrance to the bridge would tend to swing to the left side of the roadway unless driven with great care.

At the trial below the plaintiff contended that under either version of the accident, she was entitled to recover. The District Judge was of opinion that neither version would support the plaintiff's claim and therefore directed a verdict for the defendant. He thought that the unexplained collapse of the bridge gave rise to no inference of negligence and also that the defendant was under no duty to protect the corner post from such an accident since, in his view, the Railway Company had no reasonable ground to anticipate it.

■ We consider first the rights and liabilities of the parties upon the hypothesis that the bridge collapsed as soon as the truck entered upon it while running at a reasonable speed and without striking any part of the superstructure. The contention of the plaintiff upon this view of the facts is that a presumption arose, under the doctrine of res ipsa loquitur, that the accident was caused by the negligence of the defendant in respect to the construction or maintenance of the bridge, and hence that the plaintiff was entitled to recover unless the jury should find from other evidence in the case that the defendant had not failed to perform its duty in the premises. In a case of this sort where the jurisdiction of the federal court is based upon diversity of citizenship, it becomes the duty of the court, as we held in Lachman v. Pennsylvania Greyhound Lines, 4 Cir., 160 F.2d 496, to apply the doctrine of res ipsa loquitur in accordance with the law as expounded by the courts of the state where the case is tried.

■ The doctrine is formulated as follows in Anderson v. Sisson, 170 Va. 178, 183, 184, 188, 196 S.E. 688, 690, where it is said:

" ' " * * * The presumption originates from the nature of the act, not from the nature of the relations between the parties. It is indulged as a legitimate inference whenever the occurrence is such as, in the ordinary course of things, does not take place when proper care is exercised, and is one for which the defendant is responsible."

" 'A presumption of negligence from the simple occurrence of an accident arises where the accident proceeds from an act of such a character that, when due care is taken in its performance, no injury ordinarily ensues from it in similar cases, or where it is caused by the mismanagement or misconstruction of a thing over which the defendant has immediate control, or for the management or construction of which he is responsible.'

\* \* \* \* \* \*

"The doctrine is not confined to any specific class of tort. It is available to plaintiff in any action based on negligence, where

the instrumentality producing the injury is under the exclusive control of the defend- ant, and the accident is of such a character as does not occur if due care is used. The presumption, or rather the inference, arises from the nature of the accident and from the circumstances, not from the mere happening of the accident itself."

The Virginia cases are also analyzed and discussed in Virginia Electric & Power Co. v. Lowry, 166 Va. 207, 184 S.E. 177, and in Stephens v. Virginia Electric & Power Co., 184 Va. 94, 34 S.E.2d 374, where the burden of proof resting upon the plaintiff throughout the case and the weight to be given to the defendant's explanations of the cause of the accident are considered. Most pertinent for our present purposes are certain railway derailment cases, for they pertain to the degree of care required of one in complete control of an instrumentality designed for public use, and mark out the path to be followed both where the cause of the accident has not been discovered and where it has been fully explained and accounted for by the defendant. As to the burden of proof in such a case the court has the following to say in Anderson v. Sisson, 170 Va. 178, 187, 188, 196 S.E. 688, 692:

" 'The rule of res ipsa loquitur, as modified in the Tomlinson and Beard cases, supra [Norfolk-Southern R. Co. v. Tomlinson, 116 Va. 153, 81 S.E. 89; Hines v. Beard, 130 Va. 286, 107 S.E. 717], and followed in the Baker case [Chesapeake & Ohio R. Co. v. Baker, 149 Va. 549, 140 S.E. 648, 141 S.E. 753] and Chesapeake & O. R. Co. v. Tanner, 165 Va. 406, 182 S.E. 239, does not have the effect of shifting the burden of proof, and does not convert defendant's general issue into an affirmative defense, but when the evidence is all in, the question of preponderance of evidence is for the jury. See McCloskey v. Koplar, 329 Mo. 527, 46 S.W.2d 557, 92 A.L.R. 641, and authorities cited in note thereto. It follows that, in a proper case, the jury may be instructed that it is not incumbent on defendant to account for the means or cause of the happening of the event resulting in injury to plaintiff, or, after due consideration of all the evidence, if they believed that it was just as probable that the injury re- sulted from a cause for which defendant was not responsible as a cause for which it was responsible, they should find for defendant.' "

The course to be followed when there is no evidence as to the cause of the accident is indicated in the derailment cases, Norfolk-Southern R. Co. v. Tomlinson, 116 Va. 153, 81 S.E. 89, and Hines v. Beard, 130 Va. 286, 107 S.E. 717, which have been reaffirmed in the more recent decisions cited above. In both of these cases the defendant offered evidence which tended to show that it had exercised the highest degree of care in providing safe equipment and rights of way, and in the maintenance and operation thereof. This evidence in Hines v. Beard was in no way contradicted. In both cases the judgment of the lower court for the plaintiff was reversed because of erroneous instructions harmful to the defendant, and in both cases a new trial was awarded so that the jury under proper instructions might determine whether the presumption of negligence arising from the occurrence had been overcome by the other evidence in the case. In sending the case back for a new trial in the Hines case the court said (130 Va. at pages 295, 296, 107 S.E. at page 719):

"If a declaration should allege that the defendant was a carrier of passengers, and that the plaintiff was a passenger for hire on one of its trains, that the train was derailed for some cause unknown to the plaintiff, and in consequence thereof the plaintiff sustained the injury sued for, we should hold the declaration good on demurrer. It is immaterial whether you say the negligence of the defendant is a presumption of law, or of fact. We will not split hairs on the subject. It necessarily follows that, if these facts be established, and no more appears, the plaintiff is entitled to a verdict. But the jury may not believe that these facts have been established, and furthermore, it will seldom happen that there will be no further evidence in the cause. If there is other evidence in the cause, it is to be considered along with the inference of negligence arising from the derailment, and it is for the jury to say whether or not from all the evidence in the cause the neg-

ligence of the defendant has been established by a preponderance of the evidence.

"The plaintiff having based his right of recovery on the negligence of the defendant must show it by a preponderance of the evidence, and at no stage of the case can he escape this responsibility when he has proved to the satisfaction of the jury that he was a passenger, the derailment and his resulting injury, the doctrine of res ipsa loquitur dispenses with further proof on his part, until it is made to appear in some way, either by his own evidence or that introduced on behalf of the defendant, that it is at least probable that the derailment was not the result of the defendant's negligence. Unless the evidence as a whole preponderates in favor of the plaintiff on the question of the defendant's negligence, the plaintiff cannot recover. A mere equipoise will not entitle the plaintiff to a verdict. If it is just as probable that the derailment is due to some other cause as to the negligence of the defendant, there can be no recovery by the plaintiff. This, we think, is the proper application of the maxim res ipsa loquitur to derailment cases, and the one sustained by the best-considered cases."

It is plain from these decisions that when a presumption of negligence arises from the application of the doctrine of res ipsa loquitur, and the defendant offers no explanation of the cause of the accident but confines itself to testimony tending to show that it had used due diligence in respect to the instrumentality for which it was responsible, the case should be submitted to the jury in order to determine whether the plaintiff has borne the burden of proof by a preponderance of evidence. That this is the proper interpretation of the cases is shown by the following statement in Virginia Electric & Power Co. v. Lowry, 166 Va. 207, 214, 184 S.E. 177, 179, where it was said with respect to Norfolk-Southern R. Co. v. Tomlinson, "Neither plaintiff nor defendant showed how or why the train became derailed. Under these circumstances, the court held that the plaintiff was entitled to go to the jury on his prima facie case, established by the fact of derailment, and of resulting injury

to the passenger." This decision was referred to and approved in Anderson v. Sisson, 170 Va. 178, 187, 188, 196 S.E. 688.

We conclude from this review of the Virginia authorities that the case should have been submitted to the jury under the plaintiff's theory that the truck did not shatter the support of the bridge and cause it to fall. The doctrine of res ipsa loquitur is not confined to any class of tort, and the sudden fall of a public bridge, like the derailment of a train, is usually a happening which does not occur in the ordinary course of things, but gives rise to the inference, when unexplained, that proper care has not been exercised by those in control. The jury should have been instructed that if they believed the testimony of the plaintiff as to the manner in which the truck entered the bridge, an inference of negligence on the part of the defendant arose, but that the burden of proof remained with the plaintiff, and if in the minds of the jury the question of the defendant's negligence was in equal balance, their decision on this point should be for the defendant. Compare Sumey v. Fayette County, 298 Pa. 93, 147 A. 851, 68 A.L.R. 596; 8 Am.Jur., Bridges, § 73.

There was, however, weighty evidence, as we have seen, to show that the collapse of the bridge was actually due to a collision between the left side of the truck and the southeast support of the southern truss of the bridge. If this explanation had not been controverted, and if it was consistent with due care on the Railway Company's part, it would have been the duty of the trial court to withdraw the case from the jury, for under the Virginia law the presumption of negligence arising from a consideration of the plaintiff's evidence would have been overcome. It is established in Virginia that when the defendant offers uncontradicted evidence which explains an accident and shows that it was not due to negligence on its part, the presumption of negligence arising from the mere happening of the accident is overcome and the defendant is entitled to a directed verdict. This rule was set out in Stephens v. Virginia Electric & Power Co., 184 Va. 94, 34 S.E.2d 374, 377, as follows:

"In most jurisdictions it is held that the presumption arising from the res ipsa loquitur doctrine constitutes evidence sufficient to take the case to the jury even though the defendant introduces evidence which, if true, would be sufficient to rebut the presumption of negligence. See 39 Am.Jur., Negligence, §§ 309, and 355. But this is not the rule in Virginia. Here the presumption of negligence raised by the application of the doctrine is entirely overcome where properly refuted by sufficient evidence."

Accordingly, the defendant was exonerated in the case of a collapse of a bridge, Roanoke R. & Electric Co. v. Sterrett, 108 Va. 533, 62 S.E. 385, 19 L.R.A.,N.S., 316, 128 Am.St.Rep. 971, where the defendant proved that the accident was due to an imperfect weld in a support of the bridge; and in the case of the derailment of a railroad car, Virginia Electric & Power Co., Inc. v. Lowry, 166 Va. 207, 184 S.E. 177, where the defendant proved that the accident was due to a broken axle caused by a defect in the metal; and in the case of injuries from an electric shock from a switchbox, Stephens v. Virginia Electric & Power Co., 184 Va. 94, 34 S.E.2d 374, which the defendant showed were caused by a defect in a coil.

Since the case must be returned for a new trial, it is necessary to decide whether the defendant's explanation, if accepted, exculpates it from liability. At the outset is the outstanding fact, which astonishes one not skilled in bridge construction, that the entire structure will collapse if one of the supports exposed to passing traffic gives way. This is, however, the foundation of the Railway Company's defense; and the only answers to the question, which spontaneously arise as to why the supports were not shielded, are (1) that the evidence does not show that it was practicable to protect them, and (2) that the collision between the truck and the bridge was "a perfectly abnormal happening" which had never occurred before and which the Railway Company had no reasonable ground to anticipate or guard against.

We pass by the first reason as hardly worthy of extended discussion because, in the absence of any evidence to the contrary, the protection of the corner posts would not seem to present an insoluble engineering difficulty; and because, if this is not so, the conclusion would necessarily follow that the structure, although safe enough as a railroad bridge to carry trains moving on a fixed track, was not suited to motor traffic which uses all parts of the highway.

The crucial inquiry is whether a collision between a passing vehicle and one of the corner posts was so unlikely that the court may say, as a matter of law, that the Railway Company was under no duty to protect them. The defendant's contention is that it could not be expected to foresee that the driver of a heavy truck would take too quickly the sharp turn before the eastern approach to the bridge and swing so far to the left as to strike the post and shatter it; and the defendant urges that under such decisions as Virginian Railroad Company v. Farr, 147 Va. 217, 136 S.E. 668, Norfolk & Western Ry. Co. v. Kelley, 153 Va. 713, 151 S.E. 121, Southern Ry. Co. v. Magagna, 163 Va. 762, 177 S.E. 112, a railroad company performs its full duty when it constructs and guards its crossings against any contingency which may reasonably be apprehended so that persons traveling in the road with ordinary care will not be injured.

These cases and many in other jurisdictions (see 8 Am.Jur., Bridges, §§ 39–42) emphasize the duty of those responsible for the construction and maintenance of bridges to erect and maintain in connection with them suitable guard rails and obstructions to protect the traveling public; and it is pointed out that no hard and fast rule can be devised which will determine in each case the character and strength of the protective devices. The general duty is well described in the following passage from Norfolk & Western Ry. Co. v. Kelley, 153 Va. 713, 718, 719, 151 S.E. 121, 122, which was quoted with approval in Southern Ry. Co. v. Magagna, 163 Va. 762, 767, 768, 177 S.E. 112. The court said:

"While, as the ordinary means and instrumentalities of travel change, railroads must keep in mind the new methods and instrumentalities of travel in the construc-

tion and maintenance of bridges carrying highways over their tracks, under ordinary conditions a railroad company is not charged with the duty of constructing and maintaining a fence, or railing, and guard rail or other obstruction on such bridges which will insure that a fast-moving automobile driven against the barrier will not crash over the guard rail along the floor surface and through the fence or railing and fall from the bridge. But the automobile is now the most common mode of travel on the highways, and it is the duty of the company to erect and maintain on such bridges fences, or railings, and guard rails along the floor or other obstructions which will enable a person driving an automobile and using the highway in the exercise of ordinary care to travel over such bridges safely. There is no hard and fast rule as to the kind, character, and strength of the fence, or railing, or guard rails or other obstructions which must be erected and maintained; but they must be sufficient to protect a person driving an automobile on the highway at the point at which the bridge is located in the exercise of ordinary care against ordinary contingencies or those which may be reasonably apprehended. The requirement calls for more than a warning of the danger and a guide to the eye in keeping to the roadway; and the duty of the railroad company is not discharged by the erection and maintaining of a flimsy or rotten fence, or railing presenting a visible warning and guide to the eye, and a guard rail along the floor of insufficient height to deflect the wheels of an automobile which may come in contact with it when being driven over the bridge with ordinary care. Comstock v. Great Northern Railway Co., 157 Minn. 345, 196 N.W. 177; Hardin v. Southern Railway Co., 36 Ga. App. 427, 136 S.E. 802; Bond v. Billerica, 235 Mass. 119, 126 N.E. 281; Kelsea v. Stratford, 80 N.H. 148, 118 A. 9; Medema v. Hines [8 Cir.], 273 F. 52."

■ The railroad companies in these Virginia cases were found guilty of negligence in the performance of this duty, but judgment in their favor was entered because contributory negligence on the part of the plaintiffs was clearly shown. Whether these decisions would require a directed verdict for the defendant in the pending case, if the driver of the truck were the plaintiff and the jury should find that the truck collided with the post, we need not decide; for plaintiff's decedent was merely a passenger in the truck and had no control whatsoever over its operation. We need only determine whether the failure of the Railway Company to protect the corner columns was a negligent omission which concurred or cooperated with the faulty driving of the truck to cause the soldier's death. Our conclusion is that this question should be decided by the jury, for we cannot say that in these days of swiftly moving motor traffic a collision between a heavy truck and one of the vulnerable parts of the bridge, whereby a traveler could be injured or killed while using the bridge with the utmost care, could not have been foreseen as a reasonable possibility. When we disassociate ourselves from the badly driven truck in this case and suppose for the moment that some other vehicle had safely entered upon the bridge and was in the middle of it when it crashed to the track below, we find it impossible to say that the occupants would have had no case against the Railway Company because it had no reason to suppose that some day some carelessly driven truck, or some truck skidding beyond the control of its driver, would crash into a support of the bridge and destroy it. Indeed the very cases which the defendant cites, and thousands of others of every day occurrence, illustrate the possibility of such a collision and the dangers to which every user of public highways in this day is exposed. While the bridge in this case may have been safe enough for the use of the public in 1903, it is at least questionable whether the Railway Company was justified in inviting the public to use it in 1945 when, under modern conditions, it could be destroyed by a single blow of a passing car.

■ This discussion also disposes of the final and related argument of the Railway Company that the proximate and only cause of the accident was the negligent act of the driver of the truck. It may be conceded that the driver set in motion the chain of circumstances which resulted in the soldier's death, but this does not necessarily relieve the Railway Company of lia-

bility for the accident. If it be true that the bridge would not have fallen if the truck had not struck the post, it may be equally true that the collision would not have occurred if due care had been exercised to guard the post; and if the jury finds both of these circumstances, a clear case of concurring negligence, in which each wrongdoer participated, will be made out. "The general rule is that it is no defense, in actions for injuries resulting from negligence, that the negligence of third persons contributed to cause the injury to the plaintiff if the negligence of the defendant was an efficient cause, without which the injury would not have occurred." Watt v. Combs, 244 Ala. 31, 37, 12 So.2d 189, 195, 145 A.L.R. 667. Particularly apposite is the language of the Supreme Court of North Carolina in Sample v. Spencer, 222 N.C. 580, 584, 24 S.E.2d 241, 243, summarizing the rule as follows:

"Where, in this type of cases, there is evidence of negligence on the part of the defendant and likewise evidence of negligence of a third party, which negligence is not attributable to the plaintiff, the defendant is liable if its negligent act constituted one of two proximate causes of the injury. If the defendant's negligence contributed to plaintiff's injury as one of the proximate causes thereof the defendant is liable notwithstanding the negligence of the third party. Albritton v. Hill, supra, [190 N.C. 429, 130 S.E. 5]. If the negligence of the owner and driver of the car was the sole and only proximate cause of plaintiff's injury the defendant would not be liable; for, in that event the defendant's negligence would not have been one of the proximate causes of the plaintiff's injury. Bagwell v. (Southern) R. R., 167 N.C. 611, 615, 83 S. E. 814; Evans v. (Shea Bros.) Construction Co., 194 N.C. 31, 138 S.E. 411. If, however, the negligence of the city concurring with the negligence of the third party constituted the proximate cause of plaintiff's injury, it would be liable, because the defendant cannot be excused from liability unless the total causal negligence or proximate cause be attributable to another or others. When two efficient proximate causes contribute to an injury, if defendant's negligent act brought about one of such causes, it is liable. Evans v. Construction Co., supra; Wood v. (North Carolina) Public Service Corporation, 174 N.C. 697, 94 S.E. 459, 1 A.L.R. 942, and cases there cited; Albritton v. Hill, supra; Hanes v. (Southern Public) Utilities Co., 191 N. C. 13, 131 S.E. 402."

See also Brown v. Parker, 167 Va. 286, 291, 189 S.E. 339, and authorities there collected; Richmond Coca-Cola Bottling Works, Inc. v. Andrews, 173 Va. 240, 251, 3 S.E.2d 419; Goldstein v. Southern Ry. Co., 188 N.C. 636, 639, 125 S.E. 177, cited with approval in Virginian Ry. Co. v. Farr, 147 Va. 217, 228, 136 S.E. 668; Sigmon v. Mundy, 125 W.Va. 591, 598, 25 S.E.2d 636.

The judgment of the District Court must be reversed and the case remanded for a new trial in accordance with this opinion.

Reversed and remanded.

DOBIE, Circuit Judge (dissenting).

I think the judgment of the District Court should be affirmed.

There can be, in my opinion, but one rational conclusion that can be drawn from the physical evidence in this case—the break in the post of the bridge, the dent in the truck at precisely the height of the break above the floor of the bridge and the bolt or rivet from the bridge embedded in the body of the truck. That conclusion is that the truck ran into the post of the bridge and caused the fall of the bridge.

I do not think there was any legal duty here imposed upon the Southern to provide guards that would efficiently prevent motor vehicles (entering the bridge) from colliding with these bridge-posts. To hold that there is such a duty imposes on the Southern undue hardships—economic, engineering and juristic. It might well be that such guards (by narrowing the space for entry on, or exit from, the bridge) would cause more accidents than they would prevent. Certainly few (very, very few) of the hundreds of bridges that I have crossed in my automobile have any such guards.

Even if I could accept the rule enunciated in the majority opinion in this case (I have been unable to find any case that goes so far) I would still entertain grave doubts as to its applicability here. As I read the rec-

ord, there is no evidence on which to base a finding of negligence in failing to guard the end posts. To submit the case on that theory is to permit a finding, not on the evidence, but on such speculation and conjecture as the jury might indulge.