Lillian H. HUNT, Administratrix of the Estate of Charles A. Hunt, deceased, Plaintiff,

v.

ATLANTIC COAST LINE RAILROAD COMPANY, Defendant.

Civ. A. No. 4262.

United States District Court
E. D. South Carolina, Columbia Division.

Sept. 27, 1956.

878

Edens & Hammer, Columbia, S. C., for plaintiff.

McKay, McKay, Black & Walker, Columbia, S. C., for defendant.

WYCHE, District Judge.

The above action was brought by the plaintiff as administratrix of the estate of Charles A. Hunt, deceased, against the defendant under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., to recover damages for actionable negligence of the defendant in causing a derailment of one of its fast passenger trains as it passed a switch at Maple, South Carolina, resulting in the death of plaintiff's intestate, who was riding thereon as an employee of defendant. The cause of action for death was brought for the benefit of the widow and three minor children of plaintiff's intestate, as beneficiaries under the Act; and the cause of action for conscious pain and suffering brought for the benefit of the estate was withdrawn at the close of the trial of the case.

The case was tried before me without a jury, and in compliance with Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. I find the facts specially, and state my conclusions of law thereon, in the above cause, as follows:

## Findings of Fact

1. On April 20, 1953, and for some time prior thereto, Charles A. Hunt, plaintiff's intestate, was employed as a fireman-engineer by the defendant. His duties as such an employee were wholly, or partly, in furtherance of interstate commerce.

2. The defendant is a railroad corporation organized under the laws of the State of Virginia, and, in the transaction of its business, maintains and operates in interstate commerce railroad tracks in the State of South Carolina.

3. On April 20, 1953, plaintiff's intestate was engaged in his duties as a fireman for the defendant, riding on a northbound passenger train of the defendant proceeding from Florida to New York.

4. When defendant's train reached Maple, South Carolina, and while proceeding at approximately 90 miles per hour at the point of a siding switch on

the northbound tracks of the defendant, the train derailed from the tracks resulting in the death of plaintiff's intestate.

5. Shortly prior to the derailment of the passenger train, an extra freight train of the defendant proceeded by the switch at the point of derailment where it entered into a side track in order to permit the passenger train to pass along the main tracks, and it was several minutes thereafter when the northbound passenger train reached and was passing by the same switch that the derailment occurred.

6. The engineer of the passenger train which derailed testified that in his opinion the switch at the point of the derailment was lined to the siding, and the head-end of the diesel went into the siding or pass track.

7. The operation and maintenance of the switch and tracks at the place where the derailment took place were in the exclusive control of the defendant, through its employees, who could operate the switch by an automatic device from a tower, or manually, by throwing or handlocking it on the ground. No evidence was introduced by either side explaining when, how or in what manner the switch could have been lined for the siding when the northbound passenger train derailed while passing by the switch.

8. In response to an interrogatory submitted by the plaintiff, the defendant stated that it does not know the cause of the derailment, and at the trial of the case offered no explanation for the cause of the derailment, but confined itself to testimony tending to show that it provided the best of equipment and instrumentalities for which it was responsible and which were involved in the derailment.

9. Plaintiff's intestate was thirty-two years of age at the time of his death, and at the time of trial his life expectancy, according to the mortuary table, introduced in evidence, was thirty-three years. For several years prior to his death his earning capacity progressively increased, and for the year immediately preceding his death he earned $7,374.08. Of this amount he contributed to the support of his family, exclusive of income taxes and deceased's living expenses, approximately $5,700 per year. In addition, he performed work on the home in which he and his family were living. Plaintiff's intestate, prior to his death, was healthy, industrious and a man of frugal habits. He left surviving him his widow who, at the time of his death, was thirty-one years of age, a son seven years of age, and twin daughters five years of age. The children received religious, moral and intellectual training from the deceased during his lifetime.

### Conclusions of Law

1. Jurisdiction is conferred upon this Court under the provisions of the Federal Employers' Liability Act, 45 U.S.C. A. §§ 51, 56.

2. The rights and duties of the parties under the Federal Employers' Liability Act are governed by federal law. Chesapeake & Ohio Ry. Co. v. Kuhn, 284 U.S. 44, 52 S.Ct. 45, 76 L.Ed. 157.

3. The *res ipsa loquitur* doctrine is applicable in actions brought under the Federal Employers' Liability Act. Jesionowski v. Boston & Maine R. R., 329 U.S. 452, 67 S.Ct. 401, 403, 91 L.Ed. 416. " 'When a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such, as in the ordinary course of things, does not occur if the one having such control uses proper care, it affords reasonable evidence, in the absence of an explanation, that the injury arose from the defendant's want of care.' " Jesionowski v. Boston & Maine R. R., supra; San Juan Light & Transit Co. v. Requena, 224 U.S. 89, 32 S.Ct. 399, 56 L.Ed. 680. In Jesionowski v. Boston & Maine R. R., supra, the United States Supreme Court said: "Derailments are extraordinary, not usual, happenings. When they do occur, a jury may fairly find that they occurred as a result of negligence." See, also, dissenting opinion in Norwood v.

880

Kirkpatrick, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789.

 4. The *res ipsa loquitur* doctrine "means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. *Res ipsa loquitur,* where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is, whether the preponderance is with the plaintiff." Sweeney v. Erving, 228 U.S. 233, 33 S.Ct. 416, 418, 57 L.Ed. 815. This doctrine does not have the effect of shifting the plaintiff's burden of proof. Sweeney v. Erving, supra.

In Hamilton v. Southern Ry. Co., 4 Cir., 162 F.2d 884, at page 888, Judge Soper said: " * * * that when a presumption of negligence arises from the application of the doctrine of *res ipsa loquitur,* and the defendant offers no explanation of the cause of the accident but confines itself to testimony tending to show that it had used due diligence in respect to the instrumentality for which it was responsible, the case should be submitted to the jury in order to determine whether the plaintiff has borne the burden of proof by a preponderance of evidence."

 5. Applying the foregoing principles of law to the facts in this case, I conclude that the derailment of defendant's train and resulting death to plaintiff's intestate were caused by the negligence of the defendant.

6. The negligence of the defendant was a direct and proximate cause of the death of plaintiff's intestate, without which it would not have occurred.

 7. The measure of damages under the Federal Employers' Liability Act is the loss of the reasonably expected pecuniary benefits which would have resulted to the beneficiaries under the Act from the continued life of the deceased, an element of which includes the loss of nurture, guidance and training suffered by the minor children of the deceased. Michigan Cent. R. Co. v. Vreeland, 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417. The amount of future benefits must be reduced to present cash value, making adequate allowance, according to the circumstances, for the earning power of money. Chesapeake & Ohio Ry. Co. v. Kelly, 241 U.S. 485, 36 S.Ct. 630, 60 L.Ed. 1117.

For the foregoing reasons, it is my opinion that the plaintiff Lillian H. Hunt, as Administratrix of the Estate of Charles A. Hunt, deceased, for the benefit of the surviving widow and children of the deceased, is entitled to recover judgment against the defendant in the sum of One Hundred Thousand Dollars ($100,000) and the costs of this action, and

It Is So Ordered.