MARY EVANS v. SHEA BROTHERS CONSTRUCTION COMPANY.

(Filed 10 June, 1927.)

**Roads and Highways—Negligence—Rule of the Prudent Man — Danger-Signals—Warnings—Barriers — Instructions — Appeal and Error — New Trials.**

A contractor for the construction of a State highway is required to use the care of the ordinary prudent man to properly use such means as will protect those traveling thereon from being injured by places left in the incompleted work dangerous or menacing to those who may travel or attempt to travel along its route, and for its negligent failure therein is liable only for the proximate cause thereof; and an instruction that makes the defendant contractor liable absolutely to maintain an obstruction placed by it to prevent the use by the public of a place of danger, is reversible error upon which a new trial will be ordered on appeal.

APPEAL by defendants from *Stack, J.,* and a jury, at March Term, 1927, of GRAHAM.   New trial.

This is an action for actionable negligence, brought by plaintiff against defendants for injuries sustained. Plaintiff, on 10 July, 1926, was in a Ford car with her husband, going to Yellow Creek; her son Cecil Evans was driving the car. The defendants, contractors under the North Carolina State Highway Commission Project No. 930, were constructing a part of State Highway No. 108, between Brooks Gap and Yellow Creek, in Graham County, crossing Service Branch between these two points.

John Shea, one of the defendants, testified in part: "This particular fill across the Service Branch, there were two roads there, and the roads were in a curve, and in order to straighten the road up I had to make a high fill across Service Branch, and started the narrow fill with wheelers across the Service Branch, and this road around was kept open at all times. Connor Brothers went around there. We went around, different people went around all the time. It was kept open and worked by the overseer. . . . When we stopped working, I put a 50-inch pipe across this fill and somebody rolled it away. I had not worked on it in three weeks. It wasn't long before the accident, because I was up there a few days before that myself. . . . It was impossible to build it all across there at one time; have to build it a row at a time. It was dangerous to go across there. I did not put signs there because there was a public road that you could go. The fill was not completed."

Cecil Evans testified in part: "We started down to Yellow Creek, and on the right-hand side going down was a big dump and curve, and after you got out of this curve from the left-hand side of the road you hit the first part of this dump, and when you hit it, it is rough and slopes up a little bit and hit the north side next to Yellow Creek; it is a steep bank and I couldn't pull it with the speed I had, and I started back to get more speed, and the loose dirt caught me and I turned over the bank. I was right on the fill before I could see it; I could see the ridge but could not tell what it was. I don't know whether it was a road before that or not." "Q. Could you tell whether there had been tracks on that part of the roadway where your car turned over? A. The witness answered 'Yes.' The fill must have been somewhere from 40 to 50 feet long, 8 to 10 feet high. The top of the fill was 6 or 6½ feet wide. The fill was rough, and when you got close to the top was a big bank of dirt that looked like it had been dumped out and tracks going over it. I started back to get a better start and the loose dirt caught my wheel and turned me over the bank. I did not see any detour sign or barrier before I got to that point of the road. That was my first trip over the road. I did not know whether it was a public road or not."

The issues submitted to the jury, and their answers thereto, were as follows:

"1. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint? Answer: 'Yes.'

"2. What damage, if any, is the plaintiff entitled to recover of the defendant? Answer: '$750.' "

After deliberating for some hours, the jury returned to the box and requested further instructions, and asked the following question: "One thing we want to know is, is the defendant responsible if he didn't keep this barrier in the place where it looked like the road turned? Would he be responsible if he didn't keep it there all the time? He said he put it there, not on the old road, but where the new construction was." By the court: "Yes, it would be the duty of the defendant to keep an obstruction there all the time, so long as the public was using it, and if he failed to have a warning up there, he would be negligent."

To this instruction, defendants excepted, assigned error, and appealed to the Supreme Court.

*T. A. Morphew and T. M. Jenkins for plaintiff.*
*R. L. Phillips for defendants.*

CLARKSON, J. In *Hughes v. Lassiter,* 193 N. C., p. 650, this Court has recently discussed matters presented in this action, and it is unnecessary to repeat.

It was contended in the present action by defendants that the road on which the alleged injury occurred was not a detour road. The plaintiff left the main highway and traveled a dangerous road not opened. The charge goes too far, and is prejudicial. The jury should have been instructed that, under all the facts and circumstances of the case, it was their province to determine whether defendant failed to exercise ordinary care—that degree of care which a prudent man should use and exercise under like circumstances and charged with like duty.

"In order to establish a case of actionable negligence in a suit like the present, the plaintiff must show: First, that there has been a failure to exercise proper care in the performance of some legal duty which the defendant owed the plaintiff, under the circumstances in which they were placed; and, second, that such negligent breach of duty was the proximate cause of the injury—a cause that produced the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such a result was probable under all the facts as they existed. *Ramsbottom v. R. R.,* 138 N. C., 41." *Whitt v. Rand,* 187 N. C., at p. 808.

In *White v. Realty Co.,* 182 N. C., at p. 538, it is held: "His Honor correctly charged the jury that if the negligence of McQuay, the owner and driver of the Ford car, was the sole and only proximate cause of

3—194

plaintiff's injury, the defendant would not be liable; for, in that event, the defendant's negligence would not have been one of the proximate causes of the plaintiff's injury. *Bagwell v. R. R.,* 167 N. C., 615. But if the degree, however small, of the causal negligence, or that without which the injury would not have occurred, be attributable to the defendant, then the plaintiff, in the absence of any contributory negligence on his part, would be entitled to recover, because the defendant cannot be excused from liability unless the total causal negligence, or proximate cause, be attributable to another, or others. 'When two efficient proximate causes contribute to an injury, if defendant's negligent act brought about one of such causes, he is liable.' *Wood v. Public Corp., supra* (174 N. C., 697), and cases there cited." *Albritton v. Hill,* 190 N. C., 429; *Hanes v. Utilities Co.,* 191 N. C., 13. .

For the reasons given, there must be a

New trial.