SUSIE M. SAMPLE, ADMINISTRATRIX OF ROBERT SAMPLE,
v. CARLEY I. SPENCER.

(Filed 24 February, 1943.)

**1. Negligence § 13a: Automobiles § 18c—**

Negligence of the driver of a motor vehicle will not be imputed to a guest passenger having no interest in the car and no control over the driver.

**2. Negligence § 6: Automobiles § 18d—**

In an action for damages on account of the alleged negligent killing of a guest passenger in an automobile accident, where there is evidence of negligence on the part of the driver of the car in which the guest was riding and of defendant, whether the negligence of the defendant concurred with the negligence of the driver of the car and constituted the efficient cause of the injury and death is a question for the jury.

**3. Same—**

If the negligence of the defendant, in an automobile accident, contributed to the injury and death of plaintiff's intestate as one of the proximate causes thereof, the defendant would be liable notwithstanding the negligence of the driver of the car in which plaintiff's intestate was riding as a guest.

APPEAL by plaintiff from *Parker, J.,* at September Term, 1942, of PASQUOTANK.

Civil action to recover damages for the death of plaintiff's intestate, alleged to have been caused by the negligence of the defendant.

Plaintiff's intestate, Robert Sample, met his death on 8 March, 1941, while riding as a guest in a Dodge Sedan, owned and operated by the intestate's uncle, Charles Sample. On the above date, Charles Sample and his nephew, Robert Sample, left Elizabeth City shortly before 5:00 o'clock a.m., for Norfolk, Va., where both were employed. After they had proceeded a distance of some 33 miles, the car in which they were riding collided with the rear end of a truck loaded with lumber, parked on the paved portion of the highway and headed in the same direction the automobile was being driven.

The truck was owned by the defendant, Carley I. Spencer, and was being operated by Woodrow Brickhouse and a helper, Herbert Brickhouse. The collision occurred near Great Bridge, in the State of Virginia. The truck of the defendant had hit and killed a mule a few minutes before the automobile collision. The mule was lying across the left side of the road with his nose about six inches across the middle line of the highway.

The accident occurred around 10 minutes to 6:00 o'clock. The driver of the automobile testified: "As I came up the road and neared the home of Jesse Warren, the first thing I noticed on the road was the lights of an automobile parked off on my left side, on the dirt, on the shoulder, with the lights in my eyes. I slowed up and just as I got right to the lights I discovered something in the road, and I cut my car short to the right. A mule was in the road with his head across the black line, and just as I shot my car to the right I saw the truck there in about 15 feet of me. I put on my brakes but I hit the truck. I hit the steel bolster that comes out on the left of the truck. My car was torn up, the right side was completely cut off, the right front fender, the top of it was torn up all the way back. The bolster killed Robert Sample instantly. He was riding on the front seat on the right side of the car. . . . I was 15 to 18 feet from the truck before I saw it. When I saw it, I put my foot on the brake and cut it right short back to the left to try to avoid hitting it. The truck and trailer were parked on the hard surface about 18 inches from the right wheel to the edge of the concrete. There were 18 inches of concrete between the right side of the truck and the shoulder. The truck was heading in the same direction in which I was going. It was not moving. There was no one on the truck in the cab or any other part of the truck or trailer. There were no lights on the truck or trailer. No, sir. There were no flares out on the road. The condition of the shoulder on the right of the highway right off against the spot where this truck was parked was sandy. I would call them good shoulders. It was around 11 feet wide. Yes, sir, a vehicle could have driven off on that shoulder. . . . It was misting rain that morning, foggy. It had not quit raining—just misting and rain enough to run the windshield wiper. . . . I was driving about 40 miles per hour."

The defendant's witness, Woodrow Brickhouse, testified that the shoulders of the road were soft and muddy, and that he could not park his truck off of the hard surface road. That he parked it on the right side of the road within 3 or 4 inches of the edge of the pavement. Then he flagged down a passing motorist and got him to turn his automobile around and shine his "ground lights" on the mule in the road. That there were six red lights on the rear of the truck, all of which were burning. That one flare had been placed near the mule's nose and he was taking the other one further down the road when the Sample car approached. He tried to flag the car by waving the flare, but the driver of the car did not slow up and ran his car into the rear of the truck. "I would say he was running at least 70 miles an hour."

J. A. Barnett testified, he saw the collision from the porch of his home, a distance of about 150 feet away, and that in his opinion the Sample

car approached from the south at a speed not less than 65 to 70 miles an hour, and passed the mule at a speed of 40 to 45 miles an hour. He further testified that one flare was placed on the road before the Sample car approached and that a man tried to flag the car with a flare in his hand.

Frank Katzain, witness for defendant, testified: "Before I got to the place of the accident I saw red lights on the back of the trailer. I saw them first just a little before I got around the curve. I never counted the lights but there was a bunch of them. As I approached the truck a man about 5 yards back of the truck waved me down. The mule was a right good way from the truck. The man asked me to turn my car around, and I went between the mule and the truck and turned the car around and put my parking lights on the mule, and we got busy there and lit all the flares. I drove to within a yard or a yard and a half of the mule. My lights were deflected down, and I was there when Mr. Sample came up. I would say I had been there no longer than five minutes when I saw the Sample car approaching. My lights were then as I have described them. I first saw his car when it came around the curve. The flares had been set then. One was in front of the truck, one was right at the mule's nose, and Mr. Brickhouse had one in his hand waving it. He was a right good ways south of the mule; he had to jump on my right side to get out of the way of the car. The car did not stop; I do not think it slowed down, but I could not tell you."

Charles H. Harris testified for plaintiff that he heard Mr. Katzain make the statement the day after the collision occurred that: "There were not lights on the truck and trailer, that it was on the right-hand side of the road and the dead mule was on the left-hand side of the road when this car came up into the back of it."

There is a sharp conflict in the evidence as to whether or not any flares had been placed in the road at the time of the accident, and also as to whether or not red lights were burning on the rear of the truck, as required by the Virginia statutes. Likewise, there is a conflict in the evidence as to the distance the truck was parked from the carcass of the mule. A witness for the defendant testified the distance was 39 paces. Defendant's evidence also is to the effect that only one flare had been placed in the road in the direction of approaching traffic, and that it had been placed within a few inches of the mule's nose. The other flare had not been placed but was being waved by the driver of the truck while proceeding in the direction of the approaching car. According to defendant's evidence, no flare or other signal had been placed in the road between the carcass of the mule and the parked truck, as required by a Virginia statute, the pertinent part of which is as follows: "Flares and other signals: Whenever any bus or truck is disabled and stops upon

any portion of the traveled portion of any highway in this State, . . . at any time during which lights are required upon motor vehicles by Section 94 of this Act, the operator of such bus or truck shall place, or cause · to be placed, on the highway three flares or torches of a type approved by the director. One of said flares shall be placed in the center lane of traffic occupied by the disabled bus or truck, and not less than 40 paces therefrom in the direction of traffic approaching in that lane, nor not less than 40 paces from such bus or truck in the opposite direction, and one at the traffic side of such bus or truck, not closer than 10 feet from the front or rear thereof." Section 86 (a) of the Motor Vehicle Code of Virginia.

The usual issues were submitted. The jury answered the issue of negligence in the negative, and judgment was entered that the plaintiff recover nothing. Plaintiff appeals and assigns error.

*M. B. Simpson and John H. Hall for plaintiff.*
*McMullan & McMullan for defendant.*

DENNY, J. Plaintiff's intestate was a guest passenger and according to the evidence had no interest in the car nor control over the driver. Therefore, under the decisions applicable to this case, the negligence of the driver will not be imputed to plaintiff's intestate. *Albritton v. Hill,* 190 N. C., 429, 130 S. E., 5; *Gaines v. Campbell,* 159 Va., 504, 166 S. E., 704.

There is evidence of negligence on the part of the driver of the car and of the defendant. Whether the negligence of the defendant concurred with the negligence of the driver of the car, and constituted the efficient cause of the injury to plaintiff's intestate, is a question for the jury.

The plaintiff, in apt time, excepted to the charge, in that the court failed to declare and explain the law arising upon the evidence as required by C. S., 564, especially in that the court did not declare and explain the doctrine of concurrent negligence and apply such law to the facts in this case.

The court below, in its charge, fully instructed the jury upon the law and the evidence in respect to plaintiff's contention that the negligence of the defendant was the sole proximate cause of the death of plaintiff's intestate. It likewise fully instructed the jury upon the contention of the defendant that the negligence of the driver of the car was the sole proximate cause of the death of plaintiff's intestate. However, the court did not charge the jury that if the negligence of the defendant contributed to the injury and death of plaintiff's intestate as one of the proximate causes thereof the defendant would be liable notwithstanding the negligence of the driver of the car. The exception is well taken

and must be sustained. This view is in accord with the opinion and authorities cited in the case of *Harvell v. Wilmington,* 214 N. C., 608, 200 S. E., 367, where the factual situation was similar to that of the instant case. In the above case the Court said: "Where, in this type of cases, there is evidence of negligence on the part of the defendant and likewise of negligence of a third party, which negligence is not attributable to the plaintiff, the defendant is liable if its negligent act constituted one of two proximate causes of the injury. If the defendant's negligence contributed to plaintiff's injury as one of the proximate causes thereof the defendant is liable notwithstanding the negligence of the third party. *Albritton v. Hill, supra.* If the negligence of the owner and driver of the car was the sole and proximate cause of plaintiff's injury the defendant would not be liable; for, in that event, the defendant's negligence would not have been one of the proximate causes of the plaintiff's injury. *Bagwell v. R. R.,* 167 N. C., 615, 83 S. E., 814; *Evans v. Construction Co.,* 194 N. C., 31, 138 S. E., 411. If, however, the negligence of the city concurring with the negligence of the third party constituted the proximate cause of plaintiff's injury, it would be liable, because the defendant cannot be excused from liability unless the total causal negligence or proximate cause be attributable to another or others. When two efficient proximate causes contribute to an injury, if defendant's negligent act brought about one of such causes, it is liable. *Evans v. Construction Co., supra; Wood v. Public-Service Corporation,* 174 N. C., 697, and cases there cited; *Albritton v. Hill, supra; Hanes v. Utilities Co.,* 191 N. C., 13, 131 S. E., 402. The law of concurrent negligence, as thus stated, is applicable to the conflicting evidence in this case. The plaintiff has a right to rely thereon, and it was the duty of the court to apply this doctrine of the law to the evidence, and to declare and explain the law of concurrent negligence as it applied to the evidence without any special prayer. It is part of the law of the case. The fact that the jury found by its verdict that the plaintiff was not injured by the negligence of the defendant city does not render the failure of the court to charge on the doctrine of concurrent negligence immaterial or harmless. The jury was given the choice of finding either that the negligence of the city, if they found such existed, was the sole proximate cause of plaintiff's injury, or that the negligence of the driver, if such was established, was the sole proximate cause. The jury was not given an opportunity to consider the evidence under the law which permitted it to find that the negligence, if any, of the city was only one of the proximate causes of plaintiff's injury and that such negligence, concurring with that of the driver, constituted the efficient proximate cause of plaintiff's injury. The evidence in this case is such as entitles the plaintiff to have this view of the law stated and explained and applied to the evidence by the judge in the trial of his cause."

We are advertent to the case of *Smith v. Bonney,* 215 N. C., 183, 1 S. E. (2d), 371, where this Court said: "The case was tried upon the theory that the negligence of the defendant was the proximate cause of the death of the intestate, the allegation of the complaint being that the automobile of Charlie Smith, in which the intestate was a passenger, was being operated in a careful and lawful manner, and that the collision was caused by the negligent operation of the defendant's automobile. Hence, the issue of the concurrent negligence of Charlie Smith and of the defendant was not raised, but only the issue of the negligence of the defendant." However, in the instant case the issue was raised in the trial below by the defendant, and having been raised, the plaintiff was entitled to have the court in its charge to the jury explain the law under the doctrine of concurrent negligence and apply such law to the facts in the case.

We deem it unnecessary to discuss the other exceptions, since they may not arise on a new trial.

New trial.