POSEY E. WRENN v. HOWARD OLIVER GRAHAM, KIKER & YOUNT, INC., AND F. A. TRIPLETT, INC.,

and

POSEY E. WRENN, ADMINISTRATOR OF THE ESTATE OF VERTIE JUNE WRENN, DECEASED, v. HOWARD OLIVER GRAHAM, KIKER & YOUNT, INC., AND F. A. TRIPLETT, INC.

(Filed 24 February, 1954.)

**1. Highways § 4a—**

In this action involving a collision of two automobiles at the end of a detour on a highway under construction, it *is held* that the motions of the defendant construction companies for involuntary nonsuit in plaintiffs' actions and the cross-action of defendant driver, both based on alleged negligence of the road contractors in failing to maintain proper signs, signals and warnings along the highway under construction, were properly allowed for insufficiency of the evidence to support the inference that negligence on the part of either contractor contributed as the proximate cause or as one of the proximate causes of the accident.

**2. Trial § 23a—**

When the evidence relating to a particular question or issue is so clear that only a single conclusion can reasonably be drawn therefrom, such conclusion should be declared by the court as a matter of law.

**3. Negligence § 19b—**

When evidence relating to the questions of negligence and proximate cause is so clear that only a single conclusion can reasonably be drawn therefrom, the court should draw the conclusion as a matter of law.

BOBBITT, J., took no part in the consideration or decision of this case.

APPEAL by plaintiffs and defendant Howard Oliver Graham from *Sharp, Special Judge,* at 13 April, 1953, Civil Term of GUILFORD, Greensboro Division.

Two consolidated civil actions, one by the plaintiff administrator to recover damages for the alleged wrongful death of his intestate wife, Vertie June Wrenn, the other by the individual plaintiff to recover for personal injuries and property damage. The actions arose out of a collision between the Ford automobile of the plaintiff Wrenn and a Hudson car owned and operated by the defendant Howard Oliver Graham.

The individual plaintiff's case was here before on appeal from a procedural ruling. *Wrenn v. Graham,* 236 N.C. 719, 74 S.E. 2d 232.

The collision occurred on Saturday night, 4 August, 1951, shortly after midnight, on U. S. Highway No. 220 about seven miles north of Greensboro, on a section of the highway which was in process of being widened, resurfaced, and in some places straightened and relocated.

The general road work on the project was being done by the defendant Kiker & Yount, Inc., under contract with the State Highway and Public

Works Commission; whereas the defendant F. A. Triplett, Inc., was under contract with the Highway Commission to build the bridges and structures along the project.

The two vehicles, traveling in opposite directions, were meeting. The plaintiff Wrenn, accompanied by his wife, was traveling south; the defendant Graham, in his Hudson, was going north. Between them was a low wooded area through which the highway had been relocated and along which new bridges were to be built over two small streams. Both bridge projects were by-passed on the east side by the old road, which served as a single detour around both bridge sites. This detour was about 700 feet long. Wrenn reached the detour first and passed all the way through it. The collision occurred just as he was emerging from the south end onto the main highway. His car was hit on the left side by the front of defendant Graham's car. In the impact the plaintiff's wife received injuries which caused her death. The plaintiff Wrenn and the defendant Graham sustained personal injuries and both cars were damaged.

The plaintiffs instituted these actions, alleging that the injuries and damage complained of were proximately caused by the joint and concurring negligence of the defendant Graham and both contractors. The plaintiffs' specific allegations of negligence as they relate to the different defendants are as follows:

(1) That the defendants Kiker & Yount, Inc., and F. A. Triplett, Inc., (a) "failed to place and maintain adequate warning signals and signal lights along the highway a sufficient distance from the bridges and detour . . . to give notice to the traveling public of the dangerous condition" of the highway and detour; (b) "failed to place and maintain flagmen, adequate barriers, warning signs, lights, and other signals or safeguards near the point" where the detour connects with the improved portion of the highway; and (c) permitted the dangerous condition of the highway "to remain unguarded and unprotected by adequate signs, lights, and other warnings . . ."

(2) That the defendant Howard Oliver Graham (a) "failed and neglected to keep a proper lookout"; (b) "operated his automobile at a high and reckless rate of speed and without due caution and circumspection . . ."; (c) "failed to turn his automobile to the right to enter said detour . . ."; and (d) "drove . . . across the intersection of said detour and into the automobile operated by the plaintiff."

The defendant Graham, answering, (1) denied all allegations of negligence against him, (2) counterclaimed against the plaintiff Posey E. Wrenn for personal injuries and property damage, (3) alleged contributory negligence against both plaintiffs, and (4) set up claims for contribution against the corporate defendants based on allegations of negligence similar to those alleged by the plaintiffs against the corporate defendants.

Each corporate defendant by separate answer denied all allegations of negligence against it, and set up certain other defenses not pertinent to decision.

The plaintiffs' evidence discloses that this highway construction project extended for a distance of about a mile and a quarter south of the bridge detour, and that approaching the detour from the south these warning signs, devices, and barriers appeared along the highway: (1) At the southern end of the construction project there was a sign side of the highway, facing south, reading: "SLOW—ROAD UNDER CONSTRUCTION." This sign was about 42 x 48 inches and was located on the east shoulder a few feet from the pavement. (2) About 200 feet south of the detour there was a sign side of the highway, facing south, reading: "ROADWORK—25 MILES PER HOUR." This sign was about 42 x 48 inches and was located on the east shoulder near the pavement—one witness said four feet from the pavement, another said from six to eight feet. (3) A barricade was erected across the middle of the road just north of the turn-off leading into the detour. This barricade was about 20 feet wide, "made of horizontal boards painted—striped with black and white or yellow." One of the highway engineers said "The purpose of the . . . stripes . . . was for reflection at night . . . designed to reflect . . . headlights." There was a sign at the barricade reading "ROAD CLOSED—TURN RIGHT," with an arrow.

Resident Highway Engineer Hickerson testified that the signs used on this project were made in the paint shop of the State Highway and Public Works Commission.

M. A. Luther, Engineer in the employ of the Highway Commission, testified it was his duty to see that flare bowls were properly installed in front of the signs—"those little black pots you see on the highway . . ." He said he checked the signs on 3 August and again 6 August. "Flare bowls were in front of all signs on the morning of the 6th after the accident happened. . . . The flare bowls were there Friday, the 3rd. As to whether (at the time of the collision) they were burning or not I don't know. I didn't check them at night. I was never on the job that late."

The plaintiff Wrenn testified in part: "I lived about three miles from Greensboro on the Pleasant Garden road. . . . About 11 o'clock on the night of August 4, 1951, my wife and I went to Summerfield. . . . In returning to Greensboro I drove over the old part of the road that was used as a detour. . . . there was no one close behind me nor anyone just ahead of me on the detour. . . . as I was about to pass out of the by-pass at 15 miles an hour I was driving on the right side of the road with my headlights burning. As I came into the improved portion of the road I was going up a moderate grade or incline. I was just as close to the right as I could get. There was no stop sign in going from the detour into the

main highway. At this time Graham came along and ran into me. . . . the right front of his car hit the left front of my car. . . . I could not tell how fast the Graham car was going. Graham's car was traveling on the right side of the road coming toward me." Cross-examination: ". . . Going north the detour turns to the right and after the turn it straightens up and runs for some distance parallel with the new highway slightly downgrade toward the bridges. . . . There was nothing (along the detour) to obstruct my view and I was about 100 feet from the point where the detour enters the finished portion of the highway at the southern end of the detour when I saw the lights of an automobile approaching from the south. I think the car . . . was 200 feet south of the detour. . . . I knew there was a turn-off, and it looked like the approaching car was going to make that turn." (The evidence discloses that the by-pass was about 20 feet wide where it connected with the highway.)

Patrolman H. D. Byrd, who went to the scene shortly after the collision, testified in part: "When I arrived . . . The front of the Hudson (driven by Graham) was in the ditch on the west of Highway 220. It was headed into the ditch at an angle with the left front wheel in the ditch and the left front bumper and fender up against the embankment, . . . The front end of the Wrenn car (the Ford) was in the newly paved highway and the rear was on the by-pass. The front was knocked a little to the north." This witness said the front of the Wrenn car was 22 feet from the southernmost corner of the by-pass, and that he saw the sign located about 200 feet south of the turn-off reading "ROADWORK—25 MILES PER HOUR." He said it looked like "it had been burned," and he saw no flare bowl or smudge pot by that sign. Cross-Examination: "The paved portion of the highway was 22 feet wide and the shoulders on either side 11 feet wide. . . . The pavement was completed beyond and to the north of the by-pass 300 or 400 feet. The shoulders were not completed beyond the detour. . . . There were two flare pots at the scene of the accident when I arrived. Both were burning. One was in . . . front of the barricade slightly to the west and the other one was sitting on the right-hand side of the road, traveling north, just south of the cars. . . . When I arrived at the scene of the accident I found skid marks before the impact of 60 feet and 60-foot skid (marks) after,—looked like they had been caused by applying brakes. The point of impact was six feet west of the edge of the pavement. . . . The flare was burning in front of the sign located approximately a mile south of the point of impact. This flare was burning as I went by that night on the way to the accident. I could read the sign as I passed by it. . . . The sign about 200 feet south of the intersection . . . said 'ROADWORK—25 MILES PER HOUR.' That was clearly visible from an automobile approaching the intersection (northwardly) . . ."

Floyd Wrenn, brother of the plaintiff, said he went to the scene about 2 o'clock a.m. He testified that the sign 200 feet south of the detour was rather dirty and had a hole burned in it; that a flare pot was by it, but the pot was not burning.

At the close of the plaintiffs' evidence the defendants Kiker & Yount, Inc., and F. A. Triplett, Inc., moved for judgment as of nonsuit. The motions were allowed. Exception by plaintiffs and by the defendant Graham.

Thereupon the defendant Graham went upon the stand and testified he was en route that night from his home in Charlotte to Pittsburgh; that he saw a road sign a mile and three-tenths south of where the collision occurred. This sign, he said, was located on his right, about 5 feet from the pavement, and that it read "ROAD UNDER CONSTRUCTION." He slowed down and observed the appearance of the highway. It looked like it was completed. So, after traveling on about half a mile beyond the sign at reduced speed, he increased his speed "to about 45 or 50 miles per hour" and as he put it, "After passing this sign, I did not see any other signs. As I approached the point where this collision occurred . . ., I saw a car coming in a road that looked like a side road to me. . . . When I first saw the lights of that car I was a good ways, just going down the slope of a hill. . . . I did not see the entrance of this detour into the highway. . . . I was about 100 feet from the point where the collision occurred when I saw the car come into the highway. . . . about the time the car came in I saw the road block . . . so I just applied my brakes. My car collided with the car being operated by Mr. Wrenn. . . . The front end of the Wrenn car had gotten approximately 4 or 5 feet into the highway at the time the collision occurred. . . . My lights were burning and focused in proper order. . . . I was traveling about 45 to 50 miles per hour when I first saw the Wrenn car." Cross-Examination: "I had worked in Charlotte . . . all day. I went to work about 7:30 a.m. that morning and got off at 6:45 p.m. . . . We left Greensboro about 11:30 or 12:00 o'clock. . . . I had planned to drive all night. . . . When I was 100 feet back I applied my brakes and went right into the side of the car. . . . I saw the barricade and car all at one time. My lights did not fall on any objects there before I saw the Wrenn car come up into . . . the road. . . . I had my dim lights on. I dimmed them when I saw Mr. Wrenn's car" coming back up in the detour. (The evidence further discloses that the weather was clear, the roadway was dry, and that approaching the detour from the south the new highway was straight for more than 700 feet, with nothing to obstruct a motorist's vision between the detour and a little hillcrest about 600 feet south of the detour.) Further cross-examination of the defendant Graham: "Q. Did you see anything in the highway as you went down that highway, seven or eight

hundred feet straight stretch? A. No, I didn't. Q. You didn't see any signs, . . . flare or flare bowls? A. No, I didn't. . . . Q. You say your lights picked up the barricade when you were 100 feet south of the intersection? A. I said it picked up the barricade and the Wrenn car . . . all . . . together. Q. And at that point, you were 100 feet south of the intersection? A. About 100 feet, yes sir. Q. And you immediately applied your brakes. A. Yes, sir. Q. And you didn't stop until after you had hit the Wrenn car . . . and gone on past the barricade, . . . ? A. No, I didn't stop until after it hit."

At the close of the defendant Graham's evidence, the defendants Kiker & Yount, Inc., and F. A. Triplett, Inc., each moved for judgment as of nonsuit on the defendant Graham's cross action for contribution. The motions were allowed. The defendant Graham excepted, and judgments of involuntary nonsuit were entered in accordance with the rulings. Thereupon the defendant Graham and the plaintiffs, through counsel, announced in open court that in deference to the rulings of the court as to the corporate defendants, the plaintiffs and the defendant Graham each desired to submit to judgments of voluntary nonsuit. Whereupon such judgments were entered by the court.

From the judgments of involuntary nonsuit entered in favor of the corporate defendants, the plaintiffs and the defendant Graham appealed.

*H. L. Koontz and Shuping & Shuping for plaintiffs, appellants.*
*Adam Younce for defendant Howard Oliver Graham, appellant.*
*Huger S. King for defendant Kiker & Yount, Inc., appellee.*
*Smith, Sapp, Moore & Smith for defendant F. A. Triplett, Inc., appellee.*

JOHNSON, J. The general rules governing the duties and liabilities of a highway contractor in respect to providing warning signs and barricades for the protection of the traveling public in the area of a construction project are fully delineated and established by former decisions of this Court, among which are these: *Hughes v. Lassiter,* 193 N.C. 651, 137 S.E. 806; *Evans v. Construction Co.,* 194 N.C. 31, 138 S.E. 411; *Council v. Dickerson's, Inc.,* 233 N.C. 476, 64 S.E. 2d 554; *Presley v. Allen,* 234 N.C. 181, 66 S.E. 2d 789. See also 25 Am. Jur., Highways, Sections 413 and 440. Therefore, it would serve no useful purpose to restate here the rules governing the tort liability of these corporate defendants.

It suffices to say our study of the record leaves the impression that the evidence adduced below is insufficient in any aspect to support the inference that negligence on the part of either corporate defendant contributed as the proximate cause, or as one of the proximate causes, of the injuries complained of in these actions.

When the evidence relating to a particular question or issue is so clear that only a single conclusion can reasonably be drawn therefrom, such conclusion should be declared by the court as a matter of law. *Tysinger v. Dairy Products,* 225 N.C. 717, 36 S.E. 2d 246; *Harward v. General Motors Corp.,* 235 N.C. 88, 68 S.E. 2d 855. As in other cases, this rule applies both to the questions of negligence and proximate cause as essential elements of actionable negligence. *Garner v. Pittman,* 237 N.C. 328, 75 S.E. 2d 111; *Mintz v. Murphy,* 235 N.C. 304, 69 S.E. 2d 849. See also *Shives v. Sample,* 238 N.C. 724, 79 S.E. 2d 193.

Therefore, we conclude, and so hold, that the judgments of involuntary nonsuit were properly entered as to the corporate defendants.

In this view of the case, we deem it appropriate merely to announce decision, without elaboration or further comment, so as to preserve without prejudice the rights of the plaintiffs and the defendant Graham, yet to be litigated between themselves.

The results then, are:

On plaintiffs' appeal: Affirmed.

On defendant Graham's appeal: Affirmed.

BOBBITT, J., took no part in the consideration or decision of this case.