CHARLES RAY HARRIS, A MINOR, BY HIS NEXT FRIEND, MRS. LULA JONES,
v. WHITE CONSTRUCTION COMPANY AND BERNICE S. NELSON.

(Filed 9 July, 1954.)

**1. Highways § 4a—**

Plaintiff's own evidence disclosed that he saw barricades and signs warning motorists that the highway was under construction, and that the excavation of a three-foot strip of highway along one side was plainly visible. The remaining portion of the hard surface was sufficiently wide for two vehicles to meet and pass. *Held:* The evidence is insufficient to support the inference that the contractor's asserted negligence in failing to post a watchman along the excavation and in failing to exercise due care in providing adequate signs, signals and warnings along the approach of the construction project, was a contributing cause of plaintiff's collision with another vehicle traveling in the opposite direction.

**2. Automobiles §§ 13, 18h (2)—**

Evidence tending to show that a truck engaged in hauling asphalt was traveling along a one-hundred-foot strip where the highway had been excavated on one side for a width of three feet, leaving about 19 feet of hard surface for two-way traffic, that the truck was being driven 60 to 65 miles per hour, that the driver ran partly off on the shoulder of the road on his right, and in attempting to get back on the highway, lost control and struck plaintiff's car, which was traveling in the opposite direction, on plaintiff's right of the center of the highway, *is held* sufficient to be submitted to the jury on the issue of the truck driver's actionable negligence.

**3. Automobiles § 24½ e—**

Evidence that the defendant driver, who owned his own truck, was operating it in highway construction work in company with trucks owned by the road contractor, that the contractor reserved the right to terminate defendant driver's services at any time they were unsatisfactory, and that the contractor's foreman was up and down the construction project at all times during working hours directing the work of all of the drivers and other workers, *is held* sufficient to be submitted to the jury on the question of whether defendant driver was an employee of the road contractor and not an independent contractor.

**4. Master and Servant § 4a—**

The right to control the workman with respect to the manner and method of doing the work, regardless of whether such right is exercised or not, as distinguished from the mere right to require certain results, is usually determinative of whether the relationship between the parties is that of employer and employee, or independent contractor.

**5. Trial §§ 31b, 31f—**

An erroneous view of the law or an incorrect application thereof in the court's charge to the jury must be held for prejudicial error, even though given in stating the contentions of the parties.

**6. Appeal and Error § 6c (6)—**

A misstatement of a contention need not be brought to the trial court's attention when such misstatement presents an erroneous view of the law or an incorrect application of it.

APPEAL by defendant from *Frizzelle, J.,* and a jury, at 26 October, 1953, Term of PITT.

Civil action in tort involving an automobile-truck collision on N. C. Highway No. 43 about four miles west of Greenville.

The paved portion of Highway No. 43 west of Greenville at and near where the collision occurred was in process of being widened from 16 to 22 feet by the addition of a strip of new pavement 3 feet wide on each side. The construction work was being done by the corporate defendant under contract with the State Highway and Public Works Commission. The widening job had been completed where the collision occurred, but a strip on the north side some 100 feet or more long had proved defective and had been excavated to a depth of about 18 inches preparatory to being repaved. A barricade had been placed across the north side of the highway about 20 feet east of the excavation. The barricade was a half-sawhorse device with one end of the bar elevated by uprights about 3 feet high; the other end rested on the ground. The barricade was 6 or 8 feet long. It was so placed on the highway that its upright end protruded from the north side of the road over about 2 feet of the old paving, with the bar extending across the new 3-foot strip of paving and resting on the north shoulder of the road. About 350 feet east of the barricade there was a large sign side of the road reading: "CONSTRUCTION AHEAD." And 50 feet east of that sign was another one on which was printed "SLOW." Also, about 2 miles east of these signs was a third one which read: "DANGER—ROAD UNDER CONSTRUCTION," with the name of the corporate defendant underneath the sign. All the signs were of standard size and lettering as prescribed by the State Highway and Public Works Commission.

The collision occurred a few minutes after twelve o'clock noon, 31 July, 1951. The plaintiff was driving a Chevrolet sedan, the defendant Bernice S. Nelson a dump truck. The two vehicles, traveling in opposite directions, were meeting near where the strip of new paving had been dug up on the north side of the road preparatory to repaving. The plaintiff was traveling west; the defendant Nelson was going east. Between them was an open, straight stretch of road about 700 feet long, side of which was the excavation previously described.

The plaintiff offered evidence tending to show he observed the oncoming truck of the defendant Nelson at a distance of about 600 feet; that plaintiff drove on at a speed of 30 or 35 miles per hour, observed the sawhorse-barricade 300 feet before he reached it, passed the barricade, and continued on along his right side of the center of the highway; that the oncoming truck of Nelson was being operated at the excessive speed of from 60 to 65 miles per hour; that before the two vehicles met the truck left the paved portion of the highway on its right and ran for a short distance partly on the dirt shoulder; that Nelson "snatched it back" on the pavement and in doing so lost, or failed to regain, control of the truck and permitted it to cross the center of the highway and collide with the plaintiff's sedan, the left front of the truck striking the left side of the plaintiff's car near the front door and stripping it downward from there. According to the plaintiff's evidence, he had traveled a distance of 179 feet west of the sawhorse-barricade when the collision occurred. His car came to rest in the excavation side of the pavement. In the impact the plaintiff sustained permanent injuries of a serious nature, including the loss of an arm.

Nelson was working for the corporate defendant. He was hauling molten asphalt from the corporate defendant's mixing plant east of the point of collision to where the asphalt was being poured west of the point of collision. Nelson had just delivered a load where the pouring was under way, and at the time of the collision was returning, with empty truck, to the mixing plant for another load of asphalt. Under his hiring arrangement with the corporate defendant, he was using his own truck and was being paid a stated price per ton for hauling. He was operating his truck along with and among a fleet of trucks owned by the corporate defendant and operated by its own drivers. Nelson, like the rest of the drivers operating between the mixing plant and the paving project, was given a ticket by the mixing plant foreman showing the time each load of molten asphalt was delivered in the truck, and he was required to deliver it at the paving project within a fixed period of time, otherwise the asphalt would be too cold for use. The corporate defendant reserved the right "to fire" Nelson and terminate his services any time they were unsatisfactory. Nelson, like the other drivers, received direction from the corporate defendant as to the manner of loading and as to where and how to unload the asphalt. A foreman of the corporate defendant was up and down the construction project all the time during working hours directing the work of Nelson and the other drivers and workers. As the witness Satterthwaite put it: ". . . Mr. Ross was the superintendent . . . and he directed the work. He directed the laying of the asphalt; . . ."

The plaintiff's cause of action as declared on in the complaint and as sought to be developed by the evidence rests on the theory that his injuries

resulted from either or both of two proximate causes, namely: (1) the independent negligence of the corporate defendant in failing to post a watchman at the excavation and in failing to exercise due care in providing signs, signals, and warnings at the approaches to and along the course of the construction project, and (2) Nelson's negligent operation of the dump truck, imputed to the corporate defendant under the principle of *respondeat superior*.

Both defendants denied all allegations of negligence and further alleged that in any event the negligence, if any, of Nelson was not imputable to the corporate defendant for the reason that he was an independent contractor rather than an employee of the corporate defendant. The defendants also set up and specially pleaded contributory negligence of the plaintiff in bar of recovery, and in support thereof offered substantial evidence tending to show that the collision occurred near the sawhorse-barricade as the plaintiff was swinging wide to the left to pass around the barricade, and that the point of collision was over on the defendant Nelson's right side of the center of the main traveled portion of the highway.

Other evidence pertinent to decision is set out in the opinion.

The defendants' separate motions for judgment as of nonsuit, first made when the plaintiff rested his case and renewed at the conclusion of all the evidence, were overruled, after which issues raised by the pleadings were submitted to the jury. The issues submitted presented these questions: (1) negligence as to each defendant; (2) whether the relationship between the corporate defendant and Nelson was that of employer and employee or independent contractor; (3) contributory negligence of the plaintiff; and (4) damages. All the issues were answered in favor of the plaintiff and he was awarded damages in the sum of $27,500.

From judgment entered upon the verdict, the defendants appealed, assigning errors.

*James & Speight for plaintiff, appellee.*
*Albion Dunn and White & Aycock for defendants, appellants.*

JOHNSON, J.  The evidence adduced below is insufficient to support the inference of negligence on the part of the corporate defendant as a proximate cause of the plaintiff's injuries based on its failure to post a watchman or its failure to provide adequate signs, signals, or warnings for the protection of the traveling public in the vicinity of the excavation. *Presley v. Allen,* 234 N.C. 181, 66 S.E. 2d 789; *Wrenn v. Graham,* 239 N.C. 462, 80 S.E. 2d 378; 25 Am. Jur., Highways, Sec. 410 *et seq.* Numerous times during the week previous to the collision the plaintiff had passed by the construction project. On the morning of the collision

he had driven past the excavation several times going to and from Green-ville looking for "tobacco hands." He knew the nature of the work being done on the highway. The excavation was in plain view. As he ap-proached it, he said he saw the barricade for a distance of 300 feet, and according to his evidence he had passed 179 feet beyond the barricade when the collision occurred. It was not a one-way drive alongside the excavation. There was adequate space for two vehicles to meet and pass. Therefore, conceding, without deciding, that the corporate defendant may have been negligent in failing to provide adequate signals, signs, or warn-ings in the vicinity of the excavation, even so, it is manifest that such negligence in nowise contributed to the plaintiff's injuries as a proximate cause thereof. On the record as presented there is a total lack of causal connection between the collision and the alleged independent negligence of the corporate defendant.

Nevertheless, our examination of the record leaves the impression the evidence is sufficient to carry the case to the jury on the issue of action-able negligence as to the defendant Nelson and also as against the corpo-rate defendant on the theory of *respondeat superior*.

The plaintiff's testimony to the effect that Nelson, while driving 60 to 65 miles per hour, lost control of the truck and struck the plaintiff's car over on plaintiff's right side of the center of the main traveled portion of the highway suffices to make out a *prima facie* case of actionable negligence against Nelson. Whereas, the evidence bearing on supervision and direction of Nelson's work is sufficient to justify the inference that the corporate defendant retained control, or right of control, over the details of the work performed by him. This suffices to make out a *prima facie* case for the plaintiff on the issue of *respondeat superior* under appli-cation of the principles explained and applied in these decisions: *Lassiter v. Cline,* 222 N.C. 271, 22 S.E. 2d 558; *Aderholt v. Condon,* 189 N.C. 748, 128 S.E. 337. See also *Hinkle v. Lexington,* 239 N.C. 105, 79 S.E. 2d 220; *Hodge v. McGuire,* 235 N.C. 132, 69 S.E. 2d 227; *Hayes v. Elon College,* 224 N.C. 11, 29 S.E. 2d 137.

In *Hinkle v. Lexington, supra,* Devin, C. J., speaking for the Court, said, at p. 107: "The usual test for determining whether the relationship between the parties is that of employer and employee or independent con-tractor is whether the employer has the right to control the workman with respect to the manner and method of doing the work as distinguished from the mere right to require certain results, and it is not material as determi-native of the relationship whether the employer actually exercises the right of control."

We conclude, therefore, that the defendants' motions for judgment as of nonsuit were properly denied by Judge Frizzelle.

However, we are constrained to the view that the defendants are entitled to a new trial for errors appearing in the charge.

The court in charging the jury said: "The plaintiff contends that the defendant Nelson was also negligent in those identical particulars, for that it is alleged that he carelessly and negligently failed to post a watchman in the immediate vicinity where the wreck occurred, or to station a watchman there, or to erect a light there to warn people who had a right to travel over and upon the highway."

In no aspect of the case was the defendant Nelson under legal duty to post a watchman or provide for the giving of signals or warnings in the vicinity of the construction project which was being carried on by the corporate defendant, and this is so irrespective of whether the relationship between Nelson and the corporate defendant was that of employer and employee or independent contractor.

"It is the duty of the trial court to explain and apply the law to the substantive phases of the evidence adduced (G.S. 1-180), and an instruction which presents an erroneous view of the law or an incorrect application thereof, even though given in stating the contentions of the parties, is error, the rule being that while ordinarily the misstatement of a contention must be brought to the trial court's attention in apt time, this is not necessary when the statement of the contention presents an erroneous view of the law or an incorrect application of it." *Blanton v. Dairy,* 238 N.C. 382, 385, 77 S.E. 2d 922. See also *McKinney v. High Point,* 239 N.C. 232, 79 S.E. 2d 730; *Hartley v. Smith,* 239 N.C. 170, 79 S.E. 2d 767.

Since the case goes back for a retrial, we refrain from discussing the rest of the defendants' exceptions.

New trial.