The facts in substance:
The defendants, Robert G. Lassiter Company, had a contract with the State Highway Commission to construct a hard-surfaced road between Aberdeen and Pinehurst, part of State Highway System Route 70. Plaintiff lived at Parkton, and on 9 December, 1925, about daylight, started in a seven-passenger Buick automobile, sitting on the front seat with his nephew driving, an experienced automobile driver, and two others, to go to a village the other side of Albemarle, on business. They came by Raeford and reached Aberdeen about 7 o'clock in the morning, crossed the railroad and bridge and came to crossroads — one leading to the left (No. 50) and one to the right (a continuance of No. 70), which they kept. They saw no notice by barricade, detour signs, or otherwise, that the road was closed to traffic. "At the forks of the road there was no barricade, we passed on through, nothing there to tell" that the road was closed to the public. Saw no sign. They traveled this road some three miles the other side of Aberdeen and drove up within 200 or 300 *Page 652 
yards of a road machine in the road, concreting going on. They were directed — "a highway or construction man or employee instructed us to go the detour around the work. . . . When I stopped the car I received instructions to go back about 200 yards and detour. An employee of the force gave me that instruction. I didn't know that he was an employee. He drove up in a highway-colored car they used; got out of the car; he saw us coming up and we stopped, and he pointed back about 200 yards and told us to go around that way. We turned around as we were instructed, crossed over the railroad, turned down a wagon road about half a mile, and crossed back on a crossing where the traffic was crossing. . . . There were cars passing that way, and we followed the trial of the other cars." They came back about five o'clock in the evening the same route, and "On our return we undertook to cross the railroad and make the same detour, and as our car rolled over the second track of the railroad, the wheel ruts were cut so deep in the sand, the wheels fell down and the bottom of the engine fell on the T-iron and broke the engine all to pieces. . . . Traffic during the day was so great over this crossing, the sand just cut deeper, I suppose, and holes between the crossties, no timbers or anything there to keep the wheels from falling down between the ends of the crossties at all, and when my car rolled over into the hole between the ends of the crossties, the car didn't clear itself and dropped on the engine." In going up on the crossing they could not observe that the car would sink down in the sand. As they came back in the afternoon where the injury to the car occurred no instructions by signs whatever were given, only had what was given them that morning. Saw no detour signs in Pinehurst as they came back. "I account for the damage to the car on account of the railroad crossing not being properly fixed. Apparently the crossing was a temporary one. Several cars passed while we were there waiting to be pulled into Aberdeen." There were numerous cars and trucks going along the road. Some six or eight passed after they were wrecked. There was no protection against the T-iron, no boards or anything at all. The automobile driver came up "easy on the track; he was as careful a driver as I ever saw." The construction job was started the latter part of May, 1925; the work was being done the entire balance of the year.
Plaintiff offered in evidence the contract between the State Highway Commission and the defendant Robert G. Lassiter Company, particularly that part reading as follows:
"19. Detours — Public Convenience and Safety. The contractor shall, at his own expense, build and maintain in good condition such detours, including crossings over pavements, as in the opinion of the engineer may be necessary to properly care for all local traffic during the construction, *Page 653 
so far as this project is concerned, and he shall place such explicit instructions, or signs, that the public may be properly informed as to such detours.
"The State Highway Commission shall maintain all detours for strictly through traffic.
"When a detour is used for both local and through traffic, the State Highway Commission and the contractor shall jointly build and maintain in good condition such detours, including crossings over pavements, and the entire expense for same shall be equally divided between the said State Highway Commission and the contractor.
"Section 20. Barricades, Danger and Detour Signs. The contractor shall provide, erect, maintain, illuminate, and finally remove all barricades, danger and detour signs necessary to properly protect and direct traffic. Projects closed to traffic shall be protected by suitable barricades and signs, as shown on the sheet of standards. All barricades and signs, including detour signs, shall be illuminated at night. The contractor will be held responsible for all damage to the project due to failure of the signs and barricades to properly protect the work from traffic, pedestrians, animals, and from all other sources, and whenever evidence of any such traffic is found upon the unaccepted work, the engineer will order that the work, if in his opinion it is damaged, be immediately removed and replaced by the contractor without cost to the State Highway Commission."
Defendants denied the material allegations of the plaintiff. Denied it was a detour road, and alleged that it was for the teams, and used for construction purposes. That suitable detours by the most practical routes were provided; that signs, etc., were put up to properly inform the public. That plaintiff was guilty of contributory negligence.
A witness for defendants testified, in part: "Where the bunch of teams went along this place you couldn't call it a road, it was too bad. There was no detour road which left a point about 200 yards from where the work was being done and went into the woods, crossed the railroad, and came back into the highway after you passed the place where the work was being done. There was no road there supposed to be used by the public. We didn't maintain a road there; we didn't mean for it to be there. There were tracks there, and we went through. I don't figure very many cars went through there. I can't say exactly how many. I could not give any idea how many; there were some. If I could give you the right idea I would. There were some cars went through there. They didn't have any business going through there." That at Aberdeen, coming from Raeford, there was a small detour sign, three or four feet square, on a telephone pole in the fork of that road *Page 654 
showing Route 50 out to Raleigh, "and then right down in where you hit that fork after you cross the bridge there was a big detour sign, six feet square. That fork was where one road goes to Pinehurst on Route 70, and the other road goes to Raleigh. Fork of the road right after crossing the bridge, and there was a detour sign sitting in that fork; that is about 100 yards from where it is contended the plaintiff turned out on this road. This big detour sign was in Aberdeen; one was in Aberdeen, and right after crossing the bridge from Aberdeen. That is right about the limit. That is right at the fork of the road. There were big letters on that detour sign right up above; first thing said danger, road closed, under construction; the upper part of it was in red; then there was a black line pointing the way you detour. The arrow always points the way they want you to detour. Said something about under construction. The State Highway Commission put that sign there. It was right about three miles from the sign to the point where the car was wrecked. There were two signs in Pinehurst, one as you come in where the old depot was moved from. So there was one in the fork there, and then on down at Sandhill Fair Ground there was another road fork and detour sign there showing you to come by way of Southern Pines." Where the car was wrecked, "it was not maintained at all as any sort of road. It was just made there; never maintained. That is the road our teams used to go in and out; never maintained any detour like that at all. The man that was directing Mr. Hughes through there was not any of our outfit; wasn't any of our outfit there. While we were working there, the State Highway Commission had inspectors on the job all the time." Another witness testified: "The State Highway Commission put up the detour signs absolutely for through traffic detour."
This is an action for actionable negligence, brought by plaintiff against the defendants, for damages to a Buick 7-passenger automobile. The usual issues were submitted to a jury, and found in favor of plaintiff, and damages awarded.
The only question involved in this appeal is whether the court below committed error in refusing to grant the defendant's motion for judgment as in case of nonsuit. C. S., 567. On a motion to nonsuit, the evidence is to be taken in the light most favorable to plaintiff, and he is entitled to the benefit of reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom. *Page 655 
Part of the State Highway Act, 3 C. S., 3846 (s) (Public Laws 1921, ch. 2, sec. 11), is as follows: "It shall be mandatory upon the State Highway Commission, its officers and employees, or any contractor or subcontractor employed by the said commission, to select, lay out, maintain and keep in as good repair as possible suitable detours by the most practical route while said highways or roads are being improved or constructed, and it shall be mandatory upon the said Highway Commission and its employees or contractors to place, or cause to be placed, explicit directions to the traveling public during repair of said highway or road under the process of construction. All expenses of laying out and maintaining said detours to be paid out of State Highway Fund."
3 C. S., 3846 (t) makes it a misdemeanor for any one, after the State Highway is closed during construction or maintenance, to injure, etc., barriers, warning signs, etc.
It will be noted that for the protection of the traveling public the statute makes it mandatory on both the State Highway Commission and the contractor while improving and constructing roads (1) to select, lay out, maintain, and keep in as good repair as possible suitable detours by the most practical route, (2) to place, or cause to be placed, explicit directions to the traveling public during repair of said highway or road under the process of construction. Recognizing this important duty for the protection of life, limb and property, the defendants entered into a contract with the State Highway Commission, and agreed to (1) "place suchexplicit instructions or signs that the public may be properly informed as to such detours," (2) "shall provide, erect, maintain, illuminate, and finally remove all barricades, danger signs necessary to properly protect and direct traffic. All barricades and signs, including detour signs, shall be illuminated at night."
From the evidence of plaintiff, when on his journey traveling on Route 70, from Raeford, they entered Aberdeen, saw no detour signs, and when they crossed the railroad and bridge in Aberdeen, on said Route 70, they came to the forks in the road, one leading to the left (Route 50) and the other to the right (Route 70). In the language of the witness, "there was no barricade, nothing there to tell." The door of the road, as it were, was wide open, inviting them, and they followed this road some three miles and was stopped by a man in a khaki colored car and used by the highway, and he pointed out the road to go, crossing the railroad. Cars were passing that way, and the driver followed the trial of the cars. They came back the same way that evening, and the traffic during the day over the railroad was so great that the sand was cut deeper between the rails at the place they had to cross over the railroad crossing. No timbers or anything on the crossing to keep the wheels of the automobile *Page 656 
from falling down between the cross-ties. This condition could not be observed in going on the track and the driver "came up there easy on the track; he was as careful a driver as I ever saw." The wheels sunk in and the engine to the automobile was broken all to pieces. Some half dozen cars passed while they were waiting to be pulled in.
We think the court below, under the facts and circumstances of this case, correct in refusing to grant a nonsuit.
In the case of Campbell v. Boyd, 88 N.C. p. 129, Boyd owned and operated a mill; he and others built a private road connecting two public roads. The private road crossed two streams, over which bridges were built. While this route was opened mainly for the convenience of Boyd and his associates, whose lands were traversed, it was also used as well by the public, with full knowledge of Boyd and without objection from any one, in passing between the roads. The flooring to one of the bridges was sound, but the timbers underneath were in a rotten condition, known to defendant. While plaintiff was crossing the bridge with his horse, it broke and both were precipitated into the creek. Smith, C.J., said, at p. 131-2, "The way was opened by the defendant and his associates, primarily, though, it was for his and their accommodation, yet permissively to the general traveling public. It has, in fact, been thus used, and known to the defendants to be thus used, with the acquiescence of himself and the others, and under these circumstances it may fairly be assumed to be an invitation to all, who have occasion thus to use it, and hence a voluntary obligation is incurred to keep the bridges in a safe condition, so that no detriment may come to the travelers. . . . The law does not tolerate the presence over and along a way, in common use, of structures apparently sound, but in fact ruinous, like mantraps, inviting travelers to needless disaster and injury. The duty of reparation should rest on some one, and it can rest on none other but those who built and use the bridges, and impliedly at least invite the public to use them also. For neglect of this duty they must abide the consequences." Mulholland v. Brownrigg, 2 Hawk., 349; Batts v. TelephoneCo., 186 N.C. p. 120; Wills v. New Bern, 191 N.C. 507; Michaux v. RockyMount, ante, 550; Angell on Highways, 3 ed., p. 335. 20 R. C. L., p. 65, sec. 57: "If the owner or occupant has permitted persons generally to use or establish a way under such circumstances as to induce a belief that it is public in character, he owes to persons availing themselves thereof the duty due to those who come upon premises by invitation," citing Campbellcase, supra.
In King v. Douglas County et al. (Neb.), 208 N.W. Rep., p. 120: "Action to recover damages for the death of his intestate by Ludlow King, as administrator of the estate of Emma Nancy King, deceased, against the county of Douglas and Allied Contractors, Inc., for failure *Page 657 
to properly construct and maintain a public highway extending east from Elkhorn, Nebraska, and also for failure to establish and maintain suitable barriers and warning thereon." The Court said: "Even aside and apart from the direction given her by the employees of the contractors to proceed by the dirt highway, the entrance thereto being unobstructed by barrier or sign, presenting the appearance of a generally traveled public highway in present use, and being within the confines of a long-established road, she had a right to assume that it was reasonably safe for the accommodation of the public at large."
In Stark v. Lancaster, 57 N. H., p. 88, it is held (headnotes), "If a town permits a turn-out to exist from the traveled part of its highway to a private way, over adjoining land, with all the characteristic marks of a highway, it will be bound to keep such part of the turn-out as is within the laid out limits of the highway in suitable repair for the travel usually passing over it.
"Whether or not such turn-out was sufficient, whether its defective condition was the proximate cause of an accident to a team, and whether the driver was in the use of sufficient care, are all questions for the jury; and the evidence tending to show the condition of the highway, and that the accident commenced at the point where the defect was alleged to have existed, although the injury was received off the highway, the Court cannot say, as matter of law, that there was nothing for the jury to consider."
The statute made it the duty of both the State Highway Commission and the contractors, when the public highways of the State are being improved and constructed, to select, lay out, maintain and keep in as good repair as possible suitable detours by the most practical route. The further duty of both to place or cause to be placed explicit directions to the travelingpublic.
It is well settled in this jurisdiction that all contracts subsequently made and entered into are interpreted in reference to the existing law pertinent to the subject. The laws in force become a part of the contract as if they were expressly incorporated. House v. Parker, 181 N.C. p. 40;Johnson v. Yates, 183 N.C. p. 24; Douglas v. Rhodes, 188 N.C. 585; Ryanv. Reynolds, 190 N.C. p. 563; Humphrey v. Stephens, 191 N.C. p. 101;Electric Co. v. Deposit Co., ibid., p. 653.
This mandatory statute makes no distinction between local or through traffic. The life, limb and property of one who travels through the State is equally protected as one who lives in the particular locality. In compliance with this positive legislation, the State Highway Commission required defendants, in its contract for improving the road, as it should do, to provide, erect, maintain and illuminate (and finally *Page 658 
remove same) barricades, danger and detour signs, necessary to properlyprotect and direct traffic. Defendants by contract assumed this vital and important duty to the traveling public. At the mouth, or forks of the road, and nowhere in the public highway that was to be improved, the distance of some three miles, were there any barricades put up to warn or stop travelers on this public highway. For them the door was wide open and they were invited to come in, and they went in. The only barricade was the road machine and concreting. When this was reached by plaintiff, a way over the railroad track was pointed out for plaintiff to detour by a man, where the work was going on, in a khaki colored car, the kind used by the State Highway Commission or an employee of defendants.
This road, contended by plaintiff as a detour road, was in plain view of all the agents and employees connected with the work being done by the defendants, contractors. According to the evidence of plaintiff, it was being used constantly by the public with automobiles, trucks, etc. It crossed the railroad, a place made for the purpose, but no timbers or planks were placed to keep the wheels of automobiles or vehicles from falling down between the cross-ties. On plaintiff's return the evening after he crossed the railroad track in the morning, the constant travel over the railroad crossing had cut the sand deeper during the day. When he started over the crossing the automobile rolled over into and between the ends of the crossties. The bottom of the engine fell on the T-iron and broke the engine all to pieces. The driver was careful and came up easy on the track.
Under the general State law, as well as the express contract entered into by defendants with the State Highway Commission, it was the defendants' duty to use due or ordinary care to keep the railroad crossing, under all the facts and circumstances of this case, in a reasonably safe condition. It was the duty of plaintiff, before crossing the track, to use due or ordinary care. The court below, in a careful charge, explained fully the law, unexcepted to, applicable to the facts. In regard to "The State Highway Commission shall maintain all detours for strictly through traffic," set forth in the contract, this does not affect this case. Under a mandatory statute and their contract, defendants owed a duty to the public which it cannot shirk and cast on another. We can find
No error. *Page 659