BESSIE LEE REYNOLDS v. J. C. CRITCHER, INC., AND ASHEVILLE CONTRACTING CO., INC., AND NELLO L. TEER CO.

AND

MICHAEL G. REYNOLDS v. J. C. CRITCHER, INC. AND ASHEVILLE CONTRACTING CO., INC., AND NELLO L. TEER CO.

(Filed 2 February, 1962.)

**Highways § 7—**

A contractor barricading that portion of a highway under construction and placing a sign pointing to another road as a detour may not be held liable for injury to motorists resulting from a defect in a secondary road, used as a detour, which is under the exclusive supervision and control of the State Highway Commission. G.S. 136-51, G.S. 136-25.

APPEAL by plaintiffs from *Campbell, J.,* May Term 1961 of BUNCOMBE.

These actions were consolidated for trial without objection. The actions arose out of an accident which occurred on Dark Ridge Road in Jackson County, North Carolina, on 24 July 1957.

Bessie Lee Reynolds, plaintiff in one of the actions, was the driver of a 1956 Oldsmobile involved in the accident. Her husband, Michael G. Reynolds, plaintiff in the other action, was the owner of the Oldsmobile and a passenger therein at the time of the accident.

The defendants are road construction contractors. At the time of the accident they were engaged in relocating and rebuilding U. S. Highway 19A-23 between Balsam Gap and Sylva in Jackson County, North Carolina. The contract of the defendant Nello L. Teer Co., subcontracted to the Asheville Contracting Co., Inc., began at a point in Sylva and extended 6.95 miles in an easterly direction to a point 1.2 miles northeast of Willets. The contract of the defendant J. C. Critcher, Inc., began at that point and extended 2.95 miles in an easterly direction to a point 774 feet west of the Jackson-Haywood County line.

The complaints are identical in their material allegations. It is alleged in essence that plaintiffs, out-of-State tourists, were traveling in a westerly direction on U. S. Highway 19A-23; that when they reached the easternmost point of the road construction work being done by the defendants, they were halted by a barricade placed across the road by the defendants, and directed to Dark Ridge Road as a detour; that Dark Ridge Road was a dangerously narrow winding dirt road cut into the side of a mountain; that the plaintiffs had never before traveled over this road and were unfamiliar with its dangers; that at one particularly unsafe place, plaintiff Bessie Lee Reynolds, while driving on the side of the road away from the mountain, brought her car to a stop, or almost to a stop, with the right wheels approximately two feet from the outer edge of the road, in order to allow a car coming in the opposite direction to pass; that the outer edge of the road gave way under the right rear wheel and the car rolled down the mountainside landing on railroad tracks 50 feet below, resulting in serious injuries to both plaintiffs and damages to the automobile.

The plaintiffs seek to hold the defendants liable on the theory that the defendants were under a duty, imposed by the terms of their contracts with the State Highway Commission, as well as the provisions of G.S. 136-25, to select and maintain detours around the construction work, to give explicit directions to the traveling public concerning the use of such detours, erect barricades, danger signs, etc., and other warnings, and to remove hazardous conditions from the detours. It was alleged that the negligent breach of such duties was the proximate cause of plaintiffs' injuries.

The plaintiffs' evidence tends to show that plaintiffs left Asheville on the morning of 24 July 1957 with the intention of going to Cherokee.

They proceeded on U. S. Highway 19-23. Near Lake Junaluska, U. S. Highway 19 goes to the right and 19A-23 to the left into Waynesville. There was a sign in the forks of the road, placed there by the State Highway Commission, which read: "U. S. 19 A AND 23 CLOSED BETWEEN BALSAM GAP AND SYLVA. DETOUR TO SYLVA AND ATLANTA, GA. VIA CHEROKEE U. S. 19 AND 441. 39 MILES PAVED." There was an arrow on the sign, pointing to the right. A similar sign was placed in Waynesville. The plaintiffs did not take the detour, but proceeded on 19A-23 through Waynesville to Balsam Gap until they came upon a barricade placed across the road just west of the junction of 19A-23 and Balsam Road. The barricade prevented traffic from entering the road under construction by the defendant J. C. Critcher, Inc. There was an arrow on the barricade pointing to the left towards Balsam Road. The plaintiffs proceeded up this road for a short distance before turning onto the Dark Ridge Road, directed by a sign with the word "Sylva" written on it. The accident occurred on Dark Ridge Road. The plaintiffs introduced evidence tending to show that a portion of the outer edge of the road along which the plaintiffs were traveling gave way, which was the cause of the accident.

It further appears from the plaintiffs' evidence that Dark Ridge Road runs roughly parallel to U. S. Highway 19A-23 for a distance of approximately four miles before intersecting the State Highway just east of Willets. It was stipulated by the parties that Dark Ridge Road is a part of the State's secondary road system and was maintained by the Highway Commission prior to and during the construction work on 19A-23 by the defendants, and has been so maintained since the completion of that work.

At the close of plaintiffs' evidence, defendants interposed motions for judgments as of nonsuit as to each action and the motions were granted. The plaintiffs excepted to said judgments and appeal, assigning error.

*Buckmaster, White, Mindel & Clarke; Samuel D. Hill; Coward & Coward; Styles & Styles for plaintiffs.*
*Uzzell & DuMont for appellee J. C. Critcher, Inc.*
*Williams, Williams & Morris for appellee Asheville Contracting Co., Inc.*
*Ward & Bennett for appellee Nello L. Teer Co.*

DENNY, J.   The crucial question to be determined on this appeal is whether the defendants, or any of them, were under a duty, imposed by the terms of their contracts with the State Highway Commission,

or by statutory or other legal provision, to maintain Dark Ridge Road in a safe condition at the time of the plaintiffs' accident.

It is provided in Article Two of the contracts of both Nello L. Teer Company and J. C. Critcher, Inc. with the State Highway Commission, that: "It is understood and agreed by and between the parties hereto that all the construction and work included in this contract is to be done in accordance with the Specifications contained in published volume entitled 'North Carolina State Highway and Public Works Commission, Raleigh, Standard Specifications for Roads and Structures, October 1, 1952,' and supplements thereto, except as herein modified and under the directions of the Engineer of the Commission and that his decision as to the true construction and meaning of the said proposal, plans and specifications, shall be final. * * *"

North Carolina State Highway and Public Works Commission, Raleigh, Standard Specifications for Roads and Structures, October 1, 1952, contains, at page 19, the following provisions relative to the maintenance of traffic during construction: "Section 4.5. The existing road included in the project shall be kept open to public traffic at all times by the contractor while undergoing construction, unless otherwise stated in special provisions.

"The contractor shall, at his own expense, build and maintain in a safe condition temporary approaches, crossings over pavements, intersections with roads, trails, etc., *and such necessary detours to properly care for both local and through traffic during the construction of the project.* He shall also provide and place such explicits *(sic)* directions, or signs that traffic may be properly informed at all times. (Emphasis added.)

"Where so provided on the plans or in special provisions, through traffic will be detoured over approved routes when it is impossible to keep the project open because of construction operations. *Such detours will be maintained by the Commission unless otherwise provided in special provisions.* (Emphasis added.)

"The contractor shall bear all expense of constructing and maintaining in safe, passable, and convenient condition such part or parts of existing roads as are being so used between extreme limits of the work under contract during the entire time from the date working days begin or from the time the contractor moves in on the project, whichever is first, until the final acceptance of the work hereunder, and all such existing road and parts thereof and structures thereon shall be under the jurisdiction of the contractor and he shall be liable therefor. * * *"

The contract of Nello L. Teer Company with the State Highway Commission contains the following special provisions: "MAINTE-

NANCE OF TRAFFIC: The Contractor will be required to take care of highway traffic at the beginning and end of this project and at all road crossings and local traffic on the project in accordance with Section 4.5 of the specifications. He shall place and maintain such signs, danger lights and furnish watchmen or flagmen to direct traffic, as in the opinion of the Engineer may be necessary. The Contractor shall indemnify and save harmless the Commission and all its officials, agents and employees, from all suits, actions or claims of any character, name or description brought for or on account of any injuries or damages received or sustained in consequence of any neglect in maintaining traffic as specified."

The contract of J. C. Critcher, Inc. with the Commission contains the following special provision: "MAINTENANCE OF TRAFFIC: Through traffic on this project will be detoured. The contractor will be required to take care of local traffic."

The clear import of both contracts is that the contractor is relieved of all responsibility for the maintenance of traffic beyond the extreme limits of the work under construction. The State Highway Commission assumed responsibility for detouring traffic around the project. The contractors were responsible for the maintenance of local traffic. Local traffic includes those vehicles which are required to enter on the project itself or to use road crossings on the project in order to reach their destination.

The plaintiffs rely upon G.S. 136-25 and the case of *Hughes v. Lassiter*, 193 N.C. 651, 137 S.E. 806, decided pursuant thereto, as authority for their contentions.

G.S. 136-25 provides: "It shall be mandatory upon the State Highway Commission, its officers and employees, or any contractor or subcontractor employed by the said Commission, to select, lay out, maintain and keep in as good repair as possible suitable detours by the most practical route while said highways or roads are being improved or constructed, and it shall be mandatory upon the said Commission and its employees or contractors to place or cause to be placed explicit directions to the traveling public during repair of said highway or road under the process of construction. All expense of laying out and maintaining said detours shall be paid out of the State Highway Fund."

In *Hughes v. Lassiter, supra,* the defendant contractor was constructing a hard-surface road between Aberdeen and Pinehurst. The plaintiff, on his way from Parkton to a village near Albemarle, passed through Aberdeen and proceeded about three miles down the road under construction before being stopped by an employee of the defendant. He was directed to turn around, and take a detour some 200 yards up

the road. In taking this detour, the plaintiff had to cross a railroad. On the return trip that afternoon, the plaintiff undertook to make the same detour. In crossing the railroad, the wheels of his automobile fell into ruts cut in the sand by vehicles passing during the day, causing the engine to fall from his automobile, breaking it to pieces. The plaintiff's evidence was to the effect that he saw no detour signs at either end of the construction project, and further, that other cars were using the route pointed out to him as a detour. The evidence also indicated that the site of the accident was a temporary crossing used by the defendant in connection with the work being done on the hard-surface road. The lower court found the defendant liable for negligent failure to maintain the crossing in reasonable repair, and awarded damages to the plaintiff. This Court affirmed, holding that the plaintiff's evidence was sufficient to withstand defendant's motion to non-suit. *Clarkson, J.*, speaking for the Court, said: "The statute (C.S. 3846, now G.S. 136-25) made it the duty of both the State Highway Commission and the contractors, when the public highways of the State are being improved and constructed, to select, lay out, maintain and keep in as good repair as possible *suitable detours* by the most practical route. The further duty of both to place or cause to be placed *explicit directions to the traveling public.* * * *

"In compliance with this positive legislation, the State Highway Commission required defendants, in its contract for improving the road, as it should do, to provide, erect, maintain and illuminate (and finally remove same) barricades, danger and detour signs, *necessary to properly protect and direct* traffic. Defendants by contract assumed this vital and important duty to the traveling public. At the mouth, or forks of the road, and nowhere in the public highway that was to be improved, the distance of some three miles, were there any barricades put up to warn or stop travelers on this public highway. For them the door was wide open and they were invited to come in, and they went in. * * *

"This road, contended by plaintiff as a *detour road*, was in plain view of all the agents and employees connected with the work being done by the defendants, contractors. According to the evidence of plaintiff, it was being used constantly by the public with automobiles, trucks, etc. It crossed the railroad, a place made for the purpose, but no timbers or planks were placed to keep the wheels of automobiles or vehicles from falling between the cross-ties. * * *

"Under the general State law, as well as the express contract entered into by the defendants with the State Highway Commission, it was the defendants' duty to use due or ordinary care to keep the railroad crossing, under all the facts and circumstances of this case, in a reasonably safe condition. * * *"

In *Hughes v. Lassiter, supra,* the accident occurred at a temporary railroad crossing used in connection with the construction project. The detour which the plaintiff was directed to use was not under the supervision of the State Highway Commission or any other public agency. The only party charged with the maintenance of that detour was the contractor who was doing the road construction work. Moreover, it was not a detour around the construction project, but intersected the road under construction some three miles from the point where the construction work began.

In the consolidated cases now before us, the accident occurred on a secondary road which was under the exclusive control and maintenance of the State Highway Commission. G.S. 136-51 reads in pertinent part as follows: "From and after July first, one thousand nine hundred and thirty-one, the exclusive control and management and responsibility for all public roads in the several counties shall be vested in the State Highway Commission * * *."

The plaintiffs never entered upon that portion of U. S. Highway 19A-23 that was under construction. U. S. Highway 19A-23 had a barricade across it just west of the junction of that highway and Balsam Road. The barricade prevented traffic from entering upon that part of the road under construction by defendant J. C. Critcher, Inc. There was an arrow on the barricade pointing towards Balsam Road which connects with the Dark Ridge Road.

The State Highway Commission by special provision in its contract with the defendants relieved them of any responsibility for the handling of through traffic. Furthermore, the only responsibility these defendants had in connection with any traffic was to detour it at the point where the project began and to handle local traffic when required to enter on the project itself, or to use the road crossings on the project.

It clearly appears from the evidence that defendant J. C. Critcher, Inc. did not have to construct any detour from the point where its project began, but merely had to place a barricade across U. S. Highway 19A-23 just west of the junction of that highway and direct the traffic over Balsam Road.

The State Highway Commission had placed adequate signs at Lake Junaluska and Waynesville, notifying the public that U. S. Highway 19A-23 was closed between Balsam Gap and Sylva, and directed that traffic to Sylva and Atlanta, Georgia, go via Cherokee on U. S. Highway 19 and 441. The evidence further reveals that plaintiffs were on their way from Asheville to Cherokee. Cherokee was only 25 miles from Lake Junaluska over U. S. Highway 19, the detour designated by the State Highway Commission. On the other hand, if U. S. High-

way 19A-23 had not been closed between Balsam Gap and Sylva, the distance from Lake Junaluska to Cherokee by Balsam Gap and Sylva over 19A-23 and Highway 441 was 40 miles.

In *Romney v. Lynch,* 58 Utah 479, 199 P. 974, the defendant under contract with the State Road Commission was constructing a hard-surface roadbed over and along the Clearfield-Sunset Highway in Utah. The contract provided that if it became impossible to maintain the highway in condition for traffic during construction, the defendant should maintain a detour and keep it in good condition at his own expense. It became necessary during the progress of the work to close to traffic a two-mile portion of the highway. The defendant erected a barricade, and directed traffic over a public road under the management and control of the county commissioners of Davis County. The plaintiff, traveling on the Clearfield-Sunset Highway, took the detour according to the defendant's directions. While attempting to pass another vehicle on a narrow portion of the county road, he was precipitated into a ravine, due, as alleged in his complaint, to a defect in the road. The lower court dismissed the plaintiff's complaint, and the Supreme Court of Utah affirmed, holding that the defendant was under no duty to keep in good repair the county road in question, notwithstanding the provisions of his contract with the State Road Commission. The Court said: "It is conceded, as it must be, that the defendant had the right to close that highway for the purpose of making repairs or resurfacing it. * * * What he did do after closing the state road was to give notice or direction to the traveling public that it might detour or pass over the Davis county road, which was under the direction and supervision of the county commissioners of that county. The Davis county road was open to the public, and all who traveled or used it had the right to assume that it was in a reasonably safe condition. In and of itself, the closing of the Clearfield-Sunset Highway had no causal connection with the plaintiff's accident on the Davis county road. That passageway was open and available for travel. The defendant and the plaintiff alike had the right to presume it was properly maintained and reasonably safe. The defendant's contractural relations with respect to the highways were wholly connected with the Clearfield-Sunset Highway. If any legal duty, express or implied, under the facts pleaded in plaintiff's complaint, rested upon the defendant to maintain the Davis county road reasonably safe for travel, then we have indeed entered upon a new field of personal liabilities for judicial investigation and determination. * * *

"Let it be conceded * * * that defendant by his acts in closing the Clearfield-Sunset Highway and directing travel to the Davis county road thereby adopted the latter as a detour, then as a matter of law

we think defendant had a right to use it for that purpose without assuming the responsibilities that rested upon the county commissioners of Davis County of properly maintaining it. If the public highways of this state are open and presumed to be reasonably safe for the legitimate use of all citizens alike, then what good reason can be assigned why a contractor may not properly and rightfully avail himself of their use as a detour for the traveling public while he is engaged in the performance of work, such as the defendant here was undertaking to do, without having visited upon him the results occasioned by the negligence of the officials whose plain statutory duty it was to properly maintain them?"

In the case of *Hendrickson v. Brooks,* 40 N. Mex. 50, 53 P. 2d 646, the defendant contractor diverted traffic over an old highway from a new highway which he was "oil surfacing." It was admitted that before and during the time the appellant's work was in progress on the new highway, and after it was completed, the old highway was maintained by the State Highway Department. It was held that the defendant, contractor, was under no duty to erect and maintain caution signs on the old highway at the point where the accident occurred. The Court said: "(Defendant) had neither power nor authority to abate the condition which it is alleged made travel on the old highway dangerous. It is not even suggested that it was his duty to control the conduct of the State Highway Department, or its employees, with reference to the standard of maintenance of the old highway. If it was not a part of (defendant's) duty to maintain the old highway, so as to render it reasonably safe for ordinary travel, we are unable to see why he should be subjected to liability for failure to put up warning signs adequate to enable the traveling public to avoid injury.

"*We therefore hold that a contractor working upon a highway, who has a right to and does divert traffic onto another state highway being maintained by the State Highway Commission, is not liable for injuries received in accidents due to defects in said state highway.*" (Emphasis added.)

It is said in 40 C.J.S., Highways, section 255, page 300: "A highway contractor may not be held responsible for damages resulting from a defect or obstruction in a road not under his supervision," citing *Romney v. Lynch, supra.* See also 25 Am. Jur., Highways, section 361, page 653, and Anno: Highway Contractors- Detours, 29 A.L.R. 2d 876, *et seq.*

The defendants in these consolidated cases had no contractual or statutory duty to maintain Dark Ridge Road. The maintenance of that road before, during, and after the completion of the construction work on U. S. Highway 19A-23 by these defendants, was exclusively vested in the State Highway Commission.

If these defendants failed in any particular to carry out the special provisions contained in their respective contracts which involved the handling of vehicular traffic, it has not been pointed out.

The judgments entered by the court below will be upheld.

Affirmed.